# Illinois Official Reports

## Supreme Court

---

**People v. Clark, 2019 IL 122891**

---

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. ELIZABETH M. CLARK, Appellee. |
| | |
| Docket No. | 122891 |
| | |
| Filed<br>Rehearing denied | June 6, 2019<br>October 2, 2019 |
| | |
| Decision Under Review | Appeal from the Appellate Court for the Third District; heard in that court on appeal from the Circuit Court of Whiteside County, the Hon. Stanley B. Steines, Judge, presiding. |
| | |
| Judgment | Appellate court judgment reversed.<br>Circuit court judgment affirmed.<br>Cause remanded. |
| | |
| Counsel on Appeal | Lisa Madigan, Attorney General, of Springfield (David L. Franklin, Solicitor General, and Michael M. Glick and Eldad Z. Malamuth, Assistant Attorneys General, of Chicago, of counsel), for the People.<br><br>James E. Chadd, State Appellate Defender, Patricia Mysza, Deputy Defender, and Pamela Rubeo, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Chicago, for appellee. |

Justices            JUSTICE NEVILLE delivered the judgment of the court, with opinion.

Justices Thomas, Kilbride, and Garman concurred in the judgment and opinion.

Justice Burke dissented, with opinion, and dissented upon denial of rehearing, without opinion, joined by Chief Justice Karmeier and Justice Theis.

**OPINION**

¶ 1      Defendant, Elizabeth M. Clark, pled guilty to charges of burglary and unlawful use of a credit card and was released on bond pending the imposition of sentence. While awaiting sentencing, defendant was found guilty by the circuit court of violating section 31-6(a) of the Criminal Code of 2012 (Criminal Code) (720 ILCS 5/31-6(a) (West 2014)) for knowingly failing to report to the Whiteside County Jail, as required by her bail bond.

¶ 2      The appellate court found that defendant's failure to report did not constitute an escape because she was not in custody while on bond awaiting sentencing. 2017 IL App (3d) 140987, ¶ 11. The appellate court reversed the circuit court, and we granted the State's petition for leave to appeal (Ill. S. Ct. R. 315(a) (eff. Nov. 1, 2017)). For the reasons that follow, we reverse the judgment of the appellate court and affirm the judgment of the circuit court.

¶ 3                         I. BACKGROUND

¶ 4      The record contains the following uncontested facts. On October 31, 2012, defendant, who has a history of alcohol and substance abuse, pled guilty in the circuit court of Whiteside County to one count each of burglary and unlawful use of a debit card. While awaiting sentencing, defendant was released on bond so she could seek and receive substance abuse treatment. Defendant was sentenced to 90 days in jail, with credit for time served, followed by a term of 30 months' probation. As conditions of her probation, defendant was ordered to satisfactorily complete substance abuse evaluation and treatment, refrain from possessing or consuming alcohol or other prohibited substances, submit to periodic urine tests, and pay certain fees and fines.

¶ 5      In January 2013, the State filed a petition alleging violation of probation. Defendant was taken into custody, and the court found that defendant violated the terms of her probation. In February 2013 she was released on a $50,000 recognizance bond to receive treatment. On April 19, 2013, defendant's probation was revoked, and she was resentenced to 74 days in jail, time served, and a new probation term of 30 months.

¶ 6      In July 2013, the State filed another petition alleging violation of probation, and in September 2013, the court found that defendant violated the terms of her probation. In December 2013, defendant was taken into custody. On January 9, 2014, the circuit court released defendant on a temporary recognizance bond of $50,000. The court released defendant into the custody of her father for transportation directly to the White Oaks treatment center for inpatient substance abuse treatment.

¶ 7        Defendant successfully completed inpatient treatment at White Oaks, and thereafter, on February 25, 2014, the circuit court entered an order modifying the conditions of her bond. Defendant's bond was modified to require her to directly enter into the Margaret Stutsman Lodge, which is a halfway house featuring an extended residential care program for persons recovering from drug and alcohol addiction. Defendant was allowed to leave the halfway house for purposes of employment, medical needs, and 12-step program meetings. The modified bond condition also required that upon her release or discharge from the lodge, "for whatever reason (including but not limited to withdrawal, discharge, or successful completion of treatment), the Defendant must immediately return to the custody of Whiteside County Jail using the most direct route of travel and without delay or departure therefrom."

¶ 8        On June 5, 2014, defendant left the halfway house but failed to report to the Whiteside County Jail. That same day, the State filed an application to increase defendant's bond, and the circuit court issued an arrest warrant. On June 17, 2014, at the close of a hearing, defendant's April 2013 sentence of probation was revoked, and she was resentenced on her original offenses. On the burglary conviction, defendant was sentenced to 3 years' imprisonment with 281 days' credit and 2 years of mandatory supervised release. On the debit card conviction, she was concurrently sentenced to one year of imprisonment with 281 days' credit and one year of mandatory supervised release.

¶ 9        On the day defendant failed to report to the county jail, the State also filed an information charging defendant with the offense of escape in violation of section 31-6(a) of the Criminal Code, which is divided into two independent clauses: one clause containing an escape from custody provision and the other clause containing a knowing failure to report provision. 720 ILCS 5/31-6(a) (West 2014). The State charged that "defendant, having been convicted of the felony offense of Burglary and Unlawful Use of Debit Card, knowingly failed to report to the Whiteside County Jail as required on June 6, 2014, in accordance with the terms and conditions of her Temporary Recognizance Bond." Defendant surrendered herself to the Whiteside County Jail on June 14, 2014.

¶ 10       The circuit court conducted a stipulated bench trial on September 23, 2014, in which the court accepted the above-recited stipulated facts. In the stipulation, defendant admitted that after she left the Margaret Stutsman Lodge she did not report directly to the county jail and acknowledged that the conditions of her bond required her to do so.

¶ 11       Seeking acquittal, defense counsel argued, *inter alia*, that because defendant was out on bond and was not serving a prison sentence at the time she failed to report to the county jail, this failure amounted to a violation of her bond, rather than an escape. Counsel asserted that escape is the unauthorized departure from custody and, since a defendant who is free on bond is not in custody, there is no custody from which to escape.

¶ 12       The prosecutor argued that the plain language of the knowing failure to report provision does not require that a defendant be "in custody." According to the prosecutor, a convicted felon who knowingly fails to report to a penal institution has committed the offense. The prosecutor further argued that, because both of those elements were satisfied in defendant's case, she was guilty of violating section 31-6(a) despite the fact that she had been released on bond.

¶ 13       The circuit court found defendant guilty of escape. In so doing, the court noted that defendant had been convicted of two felony charges and was awaiting sentencing for those

convictions. Further, the court observed that the terms of her recognizance bond required her to return immediately to the Whiteside County Jail after her discharge from the halfway house. The circuit court determined that defendant's knowing failure to report to the county jail after leaving the halfway house constituted a violation of section 31-6(a). Accordingly, the court found that the State had satisfied its evidentiary burden, and the court convicted defendant of the offense of escape. After denying defendant's motion for a new trial, the circuit court sentenced defendant to 30 months' probation, to be served consecutively to the prison term she received for her original convictions of burglary and unlawful use of a debit card.

¶ 14    On direct review, the appellate court reversed defendant's conviction for escape. 2017 IL App (3d) 140987, ¶¶ 16-19. Relying on this court's holding in *People v. Campa*, 217 Ill. 2d 243, 259 (2005), the appellate court determined that, in order for a convicted felon to commit the offense of escape, he or she must first be in custody. 2017 IL App (3d) 140987, ¶ 11. The appellate court drew a distinction between bail and custody and focused its analysis on whether defendant was in custody when she failed to report to the county jail after leaving the halfway house. The court stated that a "defendant released on bail or a recognizance bond is not considered to be in 'custody' per the Corrections Code." *Id.*

¶ 15    The appellate court determined that defendant was not in "custody" for purposes of the escape statute at the time she violated the terms of her bond by failing to report to the county jail after leaving the halfway house. The court observed that, during the time defendant was out on bail, she was no longer under the authority of the sheriff or the Illinois Department of Corrections but rather was under the authority of the circuit court. The appellate court also observed that there was no requirement that personnel from either the county jail or the circuit court transport her to the county jail. *Id.* ¶¶ 13-14. The appellate court held: "Because the State could not establish that [defendant] was in custody, a requirement inherent in the offense of escape, it could not prove she was guilty of escape beyond a reasonable doubt." *Id.* ¶ 16. The State appeals.

¶ 16                                    II. ANALYSIS

¶ 17    The issue presented in this case is whether the State is required to show that a convicted felon was in "custody" in order to prove that he or she violated the failure to report provision in the second clause of section 31-6(a) of the Criminal Code. 720 ILCS 5/31-6(a) (West 2014). Resolution of this issue involves statutory interpretation, which presents a question of law and is subject to *de novo* review. *People v. Smith*, 2016 IL 119659, ¶ 15. For the following reasons, we hold that the statute does not require the State to make such a showing.

¶ 18    The primary objective of statutory construction is to ascertain and give effect to the true intent of the legislature. All other canons and rules of statutory construction are subordinate to this cardinal principle. *People v. Jamison*, 229 Ill. 2d 184, 188 (2008); *People ex rel. Director of Corrections v. Booth*, 215 Ill. 2d 416, 423 (2005); *People v. Botruff*, 212 Ill. 2d 166, 174 (2004); *In re Detention of Lieberman*, 201 Ill. 2d 300, 307 (2002).

¶ 19                                    A. Plain Language

¶ 20    The most reliable indicator of legislative intent is the language of the statute, given its plain and ordinary meaning. A court must view the statute as a whole, construing words and phrases in light of other relevant statutory provisions and not in isolation. Each word, clause, and

sentence of a statute must be given a reasonable meaning, if possible, and should not be rendered superfluous. The court may consider the reason for the law, the problems sought to be remedied, the purposes to be achieved, and the consequences of construing the statute one way or another. Also, a court presumes that the General Assembly did not intend absurdity, inconvenience, or injustice in enacting legislation. *In re Appointment of Special Prosecutor*, 2019 IL 122949, ¶ 23; *People v. Brown*, 2013 IL 114196, ¶ 36; *Botruff*, 212 Ill. 2d at 174-75.

¶ 21        Section 31-6 of the Criminal Code provides in part as follows:

"§ 31-6. Escape; failure to report to a penal institution or to report for periodic imprisonment.

(a) A person convicted of a felony or charged with the commission of a felony, *** who intentionally escapes from any penal institution or from the custody of an employee of that institution commits a Class 2 felony; however, a person convicted of a felony *** who knowingly fails to report to a penal institution or to report for periodic imprisonment at any time or knowingly fails to return from furlough or from work and day release or who knowingly fails to abide by the terms of home confinement is guilty of a Class 3 felony.

(b) A person convicted of a misdemeanor or charged with the commission of a misdemeanor, *** who intentionally escapes from any penal institution or from the custody of an employee of that institution commits a Class A misdemeanor; however, a person convicted of a misdemeanor *** who knowingly fails to report to a penal institution or to report for periodic imprisonment at any time or knowingly fails to return from furlough or from work and day release or who knowingly fails to abide by the terms of home confinement is guilty of a Class B misdemeanor.

(b-1) A person in the custody of the Department of Human Services under the provisions of the Sexually Violent Persons Commitment Act under a detention order, commitment order, conditional release order, or other court order who intentionally escapes from any secure residential facility or from a Department employee or any of its agents commits a Class 2 felony.

(c) A person in the lawful custody of a peace officer for the alleged commission of a felony offense *** and who intentionally escapes from custody commits a Class 2 felony; however, a person in the lawful custody of a peace officer for the alleged commission of a misdemeanor offense *** who intentionally escapes from custody commits a Class A misdemeanor.

(c-5) A person in the lawful custody of a peace officer for an alleged violation of a term or condition of probation, conditional discharge, parole, aftercare release, or mandatory supervised release for a felony *** who intentionally escapes from custody is guilty of a Class 2 felony.

(c-6) A person in the lawful custody of a peace officer for an alleged violation of a term or condition of supervision, probation, or conditional discharge for a misdemeanor *** who intentionally escapes from custody is guilty of a Class A misdemeanor.

(d) A person who violates this Section while armed with a dangerous weapon commits a Class 1 felony." 720 ILCS 5/31-6 (West 2014).

- 5 -

¶ 22    "The legislature has the power to declare and define conduct constituting a crime and to determine the nature and extent of punishment for it." *People v. Simmons*, 145 Ill. 2d 264, 269 (1991); accord *People v. Miller*, 171 Ill. 2d 330, 333 (1996) (observing that "the legislature has wide discretion in defining crimes and prescribing penalties for those crimes"). Here, it is clear from the plain language of section 31-6 that the legislature has forged a single offense of escape that can be committed in a number of ways. The several subsections of section 31-6 target distinct conduct and contain distinct elements. See, *e.g.*, *People v. Price*, 221 Ill. 2d 182, 189 (2006); *People v. Graves*, 207 Ill. 2d 478, 484-85 (2003).

¶ 23    As earlier noted, section 31-6(a) is divided into two independent clauses separated by a semicolon, with the second clause beginning with the word "however." The first clause contains an escape from custody provision, and the second clause includes a knowing failure to report provision. The word "custody" appears only in the first provision, which involves escape from the custody of a penal institution or its employee. The word "custody" is absent from the failure to report provision. "When the legislature includes particular language in one section of a statute but omits it in another section of the same statute, courts presume that the legislature acted intentionally and purposely in the inclusion or exclusion [citations], and that the legislature intended different meanings and results [citations]." *Chicago Teachers Union, Local No. 1 v. Board of Education of the City of Chicago*, 2012 IL 112566, ¶ 24; see *People v. Goossens*, 2015 IL 118347, ¶ 12 ("It is well settled that when the legislature uses certain language in one instance of a statute and different language in another part, we assume different meanings were intended."); *People v. Hudson*, 228 Ill. 2d 181, 193 (2008) (same). A court must not depart from a statute's plain language by reading into it exceptions, limitations, or conditions that the legislature did not express. *People v. Witherspoon*, 2019 IL 123092, ¶ 24; *People v. Casas*, 2017 IL 120797, ¶ 18; *Vincent v. Alden-Park Strathmoor, Inc.*, 241 Ill. 2d 495, 506 (2011).

¶ 24    Because the plain and unambiguous language of the knowing failure to report provision of section 31-6(a) does not contain a "custody" element, we will not presume that the legislature intended to include such an element therein. We will not assign the same meaning to these two provisions of section 31-6(a) or engraft the custody element of the escape from custody provision onto the failure to report provision. See, *e.g.*, *Cassidy v. China Vitamins, LLC*, 2018 IL 122873, ¶¶ 21-22; *People v. Smith*, 2016 IL 119659, ¶¶ 29-30; *In re Mary Ann P.*, 202 Ill. 2d 393, 409 (2002).

¶ 25    In the case at bar, each of the two clauses of section 31-6(a), separated by a semicolon, targets distinct conduct and contains different elements. The first clause criminalizes the actual escape from the "custody" of a penal institution or its employee. The second clause includes a provision that criminalizes the knowing failure to report to a penal institution or for periodic imprisonment. Because the legislature used the word "custody" in the first clause of section 31-6(a) but did not use the word "custody" in the knowing failure to report provision of the second clause, we conclude that the legislature did not intend to require the State to prove that a convicted felon was in custody before it could establish that he or she violated the knowing failure to report provision of section 31-6(a).

¶ 26    The plain language of the knowing failure to report provision of the escape statute makes clear that the statute is violated when two elements are proved: (1) "[a] person is convicted of a felony," and (2) the person "knowingly fails to report to a penal institution or to report for

periodic imprisonment." 720 ILCS 5/31-6(a) (West 2014). We hold that the State is only required to prove these elements.[1] Unless the language of a statute is ambiguous, a court should not resort to further aids of construction and must apply the statute as written. *People v. Cherry*, 2016 IL 118728, ¶ 13; *LaSalle Bank National Ass'n v. Cypress Creek 1, LP*, 242 Ill. 2d 231, 237 (2011); *Burrell v. Southern Truss*, 176 Ill. 2d 171, 174 (1997).

¶ 27                                    B. Legislative History

¶ 28        However, defendant argues that "a close look at how the legislature has amended [section 31-6(a)] over time shows that the intended target of either clause of [section 31-6(a)] are those individuals in custody." We disagree. Although the plain language of section 31-6(a) renders discussion of its legislative history unnecessary, the legislative history actually supports our construction.

¶ 29        Section 31-6 originally provided that an escape occurred only when (a) a person convicted of or charged with a felony intentionally escaped from the *custody* of any penal institution or its employee, (b) a person convicted of or charged with a misdemeanor intentionally escaped from the *custody* of any penal institution or its employee, or (c) a person in the lawful custody of a peace officer who intentionally escaped from *custody*. Ill. Rev. Stat. 1961, ch. 38, ¶ 31-6. Each subsection prescribed a specific penalty. *Id.* The 1970 revised Committee Comments to section 31-6 explain as follows:

> "Section 31-6 combines in logical sequence, with appropriate penalties which are substantially the same as now provided, the unrelated provisions found in [section 2807 of chapter 23 on] escape and intent to escape from State Reformatory for Women, [section 121 of chapter 108 on] escape and attempt to escape from Illinois State Penitentiary, and [section 228b of chapter 38 on] escape and intent to escape from county jail. However, instead of relating the offense to the place of confinement only, section 31-6 uses the term 'penal institution' *** and then relates the penalty to the seriousness of the offense of which the escapee has been convicted or charged." 720 ILCS Ann. 5/31-6, Committee Comments-1970, at 419 (Smith-Hurd 2010).

Section 31-6 remained substantially unchanged for many years. See Ill. Rev. Stat. 1977, ch. 38, ¶ 31-6; Ill. Rev. Stat. 1981, ch. 38, ¶ 31-6.

¶ 30        This court was required to construe section 31-6(a) as it then existed in *People v. Simmons*, 88 Ill. 2d 270 (1981). Simmons was committed to the Illinois Department of Corrections for several felonies. He was transferred from prison to the Peoria Community Correctional Center. One day he was allowed six hours of "independent day release" to go shopping. A correctional center employee drove Simmons to a local shopping center and left him unaccompanied. Simmons was required to phone in periodically, and his brother was going to drive him back to the correctional center. Simmons never returned from his shopping trip, and he was eventually arrested in Davenport, Iowa. *Id.* at 271.

---

[1]Actually, Illinois courts already apply the statute as written by way of jury instructions that do not include custody as an element of escape by failure to report. See Illinois Pattern Jury Instructions, Criminal, Nos. 22.25 (definition), 22.26 (issues) (approved Apr. 29, 2016); Illinois Pattern Jury Instructions, Criminal Nos. 22.25, 22.26 (4th ed. 2000) (same).

¶ 31    Simmons was convicted of escape in violation of section 31-6 (Ill. Rev. Stat. 1977, ch. 38, ¶ 31-6(a)) as described above. Before this court, Simmons argued that he did not violate section 31-6 because he did not commit an " 'escape,' " which is prohibited, but rather only a " 'failure to return,' " which is not. He also argued that the correctional center was not a " 'penal institution' " within the meaning of the statute. *Simmons*, 88 Ill. 2d at 272. This court rejected both arguments.

¶ 32    We held that defendant escaped from the custody of the correctional center. We attributed a broad meaning to the word "escape" consistent with its legal and ordinary usage. *Id.* at 273. We reasoned:

>    "The defendant was committed to the Department of Corrections and sent to the Peoria Community Correctional Center. However much the limits of his confinement were temporarily enlarged, or the restrictions on his conduct temporarily lessened, he was *still legally in the custody* of the Center, and had a legal duty to submit to *that custody*. When he exceeded the lawful limits of his liberty, whether by stepping across the invisible boundary around the shopping center or by standing still while the boundary, with the passage of time, shrank to the physical confines of the Peoria Community Correctional Center itself, he escaped from the Center." (Emphases added.) *Id.* at 273-74.

This court also held that the correctional center was a "penal institution" within the meaning of section 31-6(a). *Id.* at 274-75.

¶ 33    This court revisited the issue of escape from a penal institution in two consolidated cases. *People v. Marble*, 91 Ill. 2d 242 (1982). Defendant Marble was sentenced to imprisonment at the Cook County Jail with a provision for work release at the jail's work release center. He was allowed to leave the jail on work release but had to return by 8 p.m. One day he failed to return. Defendant Cole was sentenced to work release at the Peoria Community Correctional Center. One day he violated the conditions of his work release and failed to return. Each defendant was subsequently apprehended and found guilty of escape in violation of section 31-6(a) as it then existed. *Id.* at 245-46. Following the reasoning of *Simmons*, this court held that each defendant was sentenced to a penal institution and that "a failure to return from a temporary release may violate section 31-6(a)." *Id.* at 247.

¶ 34    Shortly after *Simmons* and *Marble*, the legislature amended section 31-6 to codify that the failure to return from furlough or from work and day release constitutes escape. *People v. Campa*, 217 Ill. 2d 243, 258 (2005); Ill. Rev. Stat. 1983, ch. 38, ¶ 31-6.

¶ 35    However, as amended in 1983, section 31-6(a) did not prohibit the knowing failure *to report*. Two years later, the legislature addressed this gap. Introduced as House Bill 332, Public Act 84-1083 (eff. Dec. 2, 1985) amended section 31-6(a) to add the failure to report provisions. Ill. Rev. Stat. 1985, ch. 38, ¶ 31-6. During the legislative debates, Representative Koehler observed that the statute permitted law enforcement officers to apprehend persons who failed to return from furlough. However, she explained: "But the law did not provide that that person who did not show up for the first time of periodic imprisonment, *there was no mechanism whereby that individual could... could be charged with an offense for simply not showing up*." (Emphasis added.) 84th Ill. Gen. Assem., House Proceedings, Mar. 13, 1985, at 32 (statements of Representative Koehler). Representative Cullerton likewise observed that if someone who was sentenced to periodic imprisonment "showed up the first day but didn't come back the

second day, it would be an escape." 84th Ill. Gen. Assem., House Proceedings, Mar. 13, 1985, at 33 (statements of Representative Cullerton). He explained: "The purpose of the Bill was to provide that if someone was sentenced to periodic imprisonment and they didn't show up for the first day that they were suppose[d] to appear that we deem that the offense of escape." *Id.*

¶ 36    During the Senate's consideration of House Bill 332, Senator Smith explained:

"*House Bill 332 covers a gap.* [It] amends the Criminal Code for failure to report for periodic imprisonment. Someone who has received a sentence of periodic imprisonment and if they fail to report to begin their sentence, they have committed a crime ***. *Nothing in the law presently makes it a crime for not showing up for the first day.*" (Emphases added.) 84th Ill. Gen. Assem., Senate Proceedings, June 5, 1985, at 17 (statements of Senator Smith).

¶ 37    The evolution of section 31-6 makes clear the intent of the legislature that subsection (a) provides for distinct situations. The original situation, escape from custody, is addressed in the first clause of subsection (a). Other situations, such as failure to return to custody from furlough or work and day release, are addressed in the second clause of subsection (a).

¶ 38    Yet another situation, at issue here, is failure to report, which is also addressed in the second clause of subsection (a). The statements of Representative Koehler and Senator Smith indicate that the legislature addressed a distinct and specific gap in then-existing law. Further, the statements of Representative Cullerton and Senator Smith indicate the legislature's discrete response: (1) if a person is sentenced to periodic imprisonment and (2) if that person fails to report to begin the sentence, then that person has committed a crime, denominated as escape. Custody is simply not an element in the distinct situation of failing to report, based on the plain language of section 31-6(a) and expressly confirmed in the legislative debates. Therefore, rather than supporting defendant's argument, the legislative history of section 31-6 actually confirms the statute's plain and ordinary meaning, that custody is irrelevant to the crime of failing to report.

¶ 39    Relying on language from this court in *Campa*, 217 Ill. 2d 243, the appellate court determined that, in order for a convicted felon to commit the offense of escape, he or she must first be in custody. 2017 IL App (3d) 140987, ¶ 11. In *Campa*, this court was required to construe the term "custody" within the meaning of the speedy-trial provision of the Code of Criminal Procedure of 1963 (725 ILCS 5/103-5(a) (West 2000)). *Campa*, 217 Ill. 2d at 254. This court concluded that "the legislature did not intend that the term 'custody,' as it is used in the speedy-trial statute, be equated to confinement. Rather, we believe that the legislature intended the term 'custody' to have a broad meaning and encompass lesser forms of restraint than confinement." *Id.*

¶ 40    As support for this construction of the speedy-trial statute, this court in *Campa* discussed the *Simmons* and *Marble* decisions, as well as the subsequent amendments to section 31-6. We concluded as follows:

"*Since escape is the unauthorized departure from custody (Simmons, 88 Ill. 2d at 272-73), a defendant cannot escape unless he is first in custody.* *** The escape statute shows that the legislature intended the crime of escape to evolve with the changing terms of detention used as part of the programs at our correctional institutions. A defendant must necessarily be in 'custody' while participating in these programs if he

is to be held accountable for 'escape' for failure to comply with the terms of the programs." (Emphasis added.) *Id.* at 259.

¶ 41 Our analysis of the plain language of section 31-6, confirmed by its legislative history, clearly supports the second and third above-quoted sentences. "Custody" is an essential element in failing to return to custody from furlough or work and day release. However, our analysis clearly shows that escape by failure to report does not contain a custody element. Therefore, the emphasized sentence was an overstatement, and we hereby abrogate it to the extent it effectively nullifies the failure to report provision in section 31-6. Consequently, the appellate court's reliance thereon was erroneous.

¶ 42 Proceeding under the premise that escape by failure to report contains a custody element, the appellate court discussed case law construing "custody" as it relates to other statutes. 2017 IL App (3d) 140987, ¶¶ 11-14. Particularly, relying on this court's statement that "defendants released on bail or on their own recognizance are no longer in the custody of law enforcement" (*People v. Hunt*, 234 Ill. 2d 49, 63 (2009)), the appellate court concluded that defendant, who was released on bond, was not in custody and could not be charged with failure to report. 2017 IL App (3d) 140987, ¶¶ 14-15. Likewise, we are invited to consider the meaning of "custody" in the context of statutes pertaining to bail (725 ILCS 5/110-1 *et seq.* (West 2014)), violation of bail bond (720 ILCS 5/32-10 (West 2014)), speedy trial (725 ILCS 5/103-5 (West 2014)), and presentence credit (730 ILCS 5/5-4.5-100(b) (West 2014)).

¶ 43 We decline the invitation. We have held that custody is not an element of the offense of escape by failure to report based on its clear and unambiguous language. "When the statutory language is clear and unambiguous, it must be given effect without resort to other tools of construction." *People v. Christopherson*, 231 Ill. 2d 449, 454-55 (2008). Therefore, we need not and do not consider whether defendant was or was not "in custody" pursuant to other statutes.

¶ 44                                  C. "Constructive" Custody

¶ 45 In support of the appellate court's decision, defendant argues that each of the situations covered in the second clause of section 31-6(a) "is a type of detention involving constructive custody. Thus, even though the exact word 'custody' is not contained in that subsection, under the statute's plain language, it only applies when an individual fails to return or report from constructive custody." We reject this argument.

¶ 46 This court has construed the word "custody" within the meaning of other statutes. We have recognized that the word "custody" is very elastic and expansive and encompasses not only actual physical custody but also "constructive" custody, which denotes control by legal authority. *People v. Beachem*, 229 Ill. 2d 237, 245-46 (2008) (construing 730 ILCS 5/5-8-7(b) (West 2004) (presentence credit)); *Campa*, 217 Ill. 2d at 253-54 (construing 725 ILCS 5/103-5(a) (West 2000) (speedy trial)).

¶ 47 However expansive the concept of "custody," the plain language of the failure to report provision of section 31-6(a), as confirmed by its legislative history, makes clear that custody is not an element of the offense. The legislature addressed a gap in section 31-6(a) that lacked a mechanism of enforcement. "Nothing in the law" made it a crime to fail to report for the first day to a penal institution or to periodic imprisonment. Rather than invoke "constructive custody," the legislature proscribed conduct that heretofore was not illegal. The legislature

- 10 -

simply created another means of committing the offense of escape that does not include custody as an element. See 84th Ill. Gen. Assem., Senate Proceedings, June 5, 1985, at 17 (statements of Senator Smith). This court may not "constructively" add a requirement to a statute that the legislature plainly chose not to include. See, *e.g.*, *Witherspoon*, 2019 IL 123092, ¶ 24; *People v. Johnson*, 2013 IL 114639, ¶ 12; *People v. Lewis*, 223 Ill. 2d 393, 402-03 (2006). "No rule of construction authorizes this court to declare that the legislature did not mean what the plain language of the statute imports, nor may we rewrite a statute to add provisions or limitations the legislature did not include." *Smith*, 2016 IL 119659, ¶ 28; accord *People v. Woodard*, 175 Ill. 2d 435, 443 (1997).

¶ 48    Construing the plain and unambiguous language of the knowing failure to report provision of section 31-6(a) of the Criminal Code, we hold that custody is not an element of the offense. The knowing failure to report provision applies to defendant's conduct because she failed to report to the Whiteside County Jail after leaving the halfway house as required by her bail bond. Therefore, the State established that defendant violated the escape statute when it proved that defendant, a convicted felon, knowingly failed to report to a penal institution as required by the conditions of her bail bond.

¶ 49                    D. Prosecutorial Discretion: Failure to Report
                                 or Violation of Bail Bond

¶ 50    Thus, it was ultimately within the discretion of the prosecutor to charge defendant with either violation of bail bond (720 ILCS 5/32-10 (West 2014)) or escape by failure to report (*id.* § 31-6(a)). At trial, the parties disagreed as to which crime was more appropriate for defendant to be charged with.

¶ 51    A court may not order the state's attorney to file a particular charge against a defendant. *In re J.J.*, 142 Ill. 2d 1, 7 (1991); *People ex rel. Daley v. Moran*, 94 Ill. 2d 41, 46 (1983). Rather, the state's attorney has the exclusive discretion to decide which of several charges shall be brought or whether to prosecute at all. *People v. Jamison*, 197 Ill. 2d 135, 161 (2001) (collecting cases); *People v. Pankey*, 94 Ill. 2d 12, 16 (1983). It is also quite established that "the State has the discretion to prosecute under either of two statutes where a defendant's conduct violates both statutes and the statutes contain different elements." *People v. Buffalo Confectionery Co.*, 78 Ill. 2d 447, 458 (1980) (collecting cases); see *Jamison*, 197 Ill. 2d at 162.

¶ 52    We have held that a person commits the offense of escape by failure to report, as provided by section 31-6(a), when he or she is convicted of a felony and fails to report to a penal institution or for periodic confinement. 720 ILCS 5/31-6(a) (West 2014). In contrast, a person commits the offense of violation of bail bond when he or she has forfeited bail and wilfully failed to surrender within 30 days after the forfeiture. *Id.* § 32-10(a); *People v. Ratliff*, 65 Ill. 2d 314, 318 (1976) (stating elements); *People v. Costa*, 2013 IL App (1st) 090833, ¶ 20 (same).

¶ 53    In the case at bar, given defendant's probation record, it was entirely reasonable for the prosecutor to charge defendant with escape by failure to report to jail upon her departure from the halfway house, rather than wait for 30 days to charge defendant with violation of bail bond. Probation is a type of judgment after the defendant has been found guilty. *People v. Allegri*, 109 Ill. 2d 309, 314 (1985). Probation simultaneously serves as a form of punishment and a method of rehabilitation. *People v. Meyer*, 176 Ill. 2d 372, 379 (1997). The purpose of

probation is to benefit society by restoring a defendant to useful citizenship, rather than allowing a defendant to become a burden as a habitual offender. *Id.* "It is employed when the defendant's continued presence in society would not be threatening and the defendant's rehabilitation would be enhanced." *Allegri*, 109 Ill. 2d at 314. A court's subject-matter jurisdiction over a defendant on probation lasts only for the duration of the probation (*People v. Carter*, 165 Ill. App. 3d 169, 172 (1988)) and ends with the probation expiration date (*People v. Wilson*, 293 Ill. App. 3d 339, 31 (1997)). "Once the probation period ends," "probation is terminated and there is nothing left to revoke or modify." *Id.*

¶ 54        Here, through probation, the circuit court retained jurisdiction over defendant to provide her with the opportunity to receive treatment. See, *e.g.*, *People v. Neckopulos*, 284 Ill. App. 3d 660, 663-64 (1996). However, she repeatedly violated the terms of her probation. On April 19, 2013, the circuit court revoked defendant's original sentence of probation and resentenced her to a 30-month probation term. In September 2013 the court found that defendant violated the terms of her probation. However, it is noteworthy that the court did not revoke the April 2013 probation order. Rather, the court released her for inpatient substance abuse treatment and subsequently for an extended residential care program at a halfway house. Thus, the April 2013 probation order was in effect in June 2014 when defendant was charged with escape for failing to report to jail after leaving the halfway house and remained in effect until June 17, 2014, when that order was revoked and defendant was resentenced to imprisonment on her original offenses. Indeed, the court's retention of jurisdiction over defendant shows that the court was striving to enhance her rehabilitation. We hold that it was within the discretion of the prosecutor to charge defendant with failure to report to jail upon her departure from the halfway house, rather than to wait for 30 days in order to charge her with violation of bond.

¶ 55                                      III. CONCLUSION

¶ 56        "Where, as here, a statute is clear and unambiguous, it must be enforced as written." *Booth*, 215 Ill. 2d at 426. If our construction of section 31-6(a) is not what the General Assembly intended, we invite that body to review this statutory scheme and revise it for purposes of clarity. See, *e.g.*, *People v. Pearse*, 2017 IL 121072, ¶ 48.

¶ 57        For the foregoing reasons, we reverse the appellate court's judgment and affirm the circuit court's judgment finding defendant guilty of escape in violation of section 31-6(a) of the Criminal Code. We remand the matter to the circuit court for proceedings consistent with this opinion.

¶ 58        Appellate court judgment reversed.
¶ 59        Circuit court judgment affirmed.
¶ 60        Cause remanded.

¶ 61        JUSTICE BURKE, dissenting:

¶ 62        The majority states the issue in this case as "whether the State is required to show that a convicted felon was in 'custody' in order to prove that he or she violated" the portion of the escape statute that makes it a felony offense to knowingly fail to report to a penal institution. *Supra* ¶ 17; see 720 ILCS 5/31-6(a) (West 2014). This question could have been answered easily by reference to our long-standing case law. As this court has held, escape is the

- 12 -

unauthorized departure from custody (*People v. Simmons*, 88 Ill. 2d 270, 272-73 (1981)), and therefore, " 'defendant cannot escape unless he is first in custody.' " *People v. Beachem*, 229 Ill. 2d 237, 254 (2008) (quoting *People v. Campa*, 217 Ill. 2d 243, 259 (2005)). Nevertheless, the majority concludes, in direct contravention to our case law, that custody is not an element of this offense.

¶ 63        I disagree with the majority and would hold, in accord with our case law, that a defendant must necessarily be in custody to be held accountable for escape. Accordingly, I respectfully dissent.

¶ 64                                                    BACKGROUND

¶ 65        On October 31, 2012, the defendant, Elizabeth M. Clark, pled guilty to charges of burglary and unlawful use of a credit card in the circuit court of Whiteside County. She was sentenced to 30 months' probation, with the conditions that she not possess or consume alcohol, that she submit to a weekly urine test, and that she complete an evaluation and obtain treatment for substance abuse.

¶ 66        On January 15, 2013, the State filed a petition alleging that defendant failed to comply with the conditions of her probation. Defendant was taken into custody on January 18, 2013, and at a hearing on January 25, 2013, the court found defendant had violated her probation. Thereafter, on April 19, 2013, a sentencing hearing was held, and defendant was resentenced to a new term of 30 months' probation with substantially the same conditions as her previous sentence.[2]

¶ 67        On July 29, 2013, the State filed a second petition alleging that defendant failed to comply with the conditions of her probation. At a September 6, 2013, hearing, the circuit court accepted a written admission prepared by defendant and found her in violation of probation. A presentencing report was ordered, and the matter was continued for resentencing at a later date. With defendant in custody, a hearing was held on January 3, 2014, at which time the circuit court agreed to release defendant on a $50,000 recognizance bond[3] if and when inpatient treatment for substance abuse became available. The court also continued the matter for sentencing to February 7, 2014.

¶ 68        On January 9, 2014, while defendant was still awaiting resentencing for violation of probation, an order was entered pursuant to the court's ruling on January 3, releasing defendant

---

[2]Neither of defendant's probation orders are contained in the record. The descriptions of the conditions imposed in the probation orders are taken from the presentence investigation report prepared for defendant's sentencing in her escape trial.

[3]Section 110-2 of the Code of Criminal Procedure of 1963 (725 ILCS 5/110-2 (West 2016)) provides:

"When from all the circumstances the court is of the opinion that the defendant will appear as required either before or after conviction and the defendant will not pose a danger to any person or the community and that the defendant will comply with all conditions of bond, *** the defendant may be released on his or her own recognizance. *** A failure to appear as required by such recognizance shall constitute an offense subject to the penalty provided in Section 32-10 of the Criminal Code of 2012 [(720 ILCS 5/32-10 (West 2016))] for violation of the bail bond, and any obligated sum fixed in the recognizance shall be forfeited and collected in accordance with subsection (g) of Section 110-7 of this Code."

on a $50,000 recognizance bond so that she could participate in inpatient substance abuse treatment at the White Oaks treatment center. Among other conditions, the bond included a requirement that, upon her release or discharge from the program at White Oaks, defendant "immediately return to the custody of the Whiteside County Jail, using the most direct route of travel and without delay or departure therefrom." The bond also stated that defendant understood and "is on notice that if she fails to appear at the Whiteside County Jail or in court when required by the Court *** sentencing could proceed in her absence" and that "any violation of the conditions of this bond may result in [defendant] being subject to re-arrest and confinement." The bond did not inform defendant that her failure to return to the jail could result in her arrest for the offense of escape.

¶ 69        On February 25, 2014, the circuit court modified defendant's recognizance bond to permit her to reside at a halfway house known as Margaret Stutsman Lodge upon her release from White Oaks in order to receive "aftercare" treatment. The modified bond order continued to require defendant to "immediately return" to the Whiteside County Jail upon her release or discharge from the halfway house.

¶ 70        Defendant successfully completed the inpatient treatment program at White Oaks and was discharged on March 5, 2014, at which time she began residing at Margaret Stutsman Lodge. Importantly, at this time, defendant still had not been resentenced following the court's September 6, 2013, finding that she had violated probation. Rather, she remained released on a $50,000 recognizance bond while awaiting resentencing. And, because defendant was not yet sentenced to any term of incarceration, the Whiteside County Jail had no lawful authority to detain defendant or control her movements. Instead, the legal authority to control defendant's movements and defendant's legal obligation to return to the jail stemmed solely from the circuit court's modified bond order.

¶ 71        On June 5, 2014, defendant was discharged from Margaret Stutsman Lodge. Although the facility advised defendant that she was obligated by the terms of her bond to travel directly to the Whiteside County Jail upon her discharge, defendant did not do so. As a result, that same day the State filed an application to increase bond.[4] After hearing testimony from Whiteside County Court Services, the court issued a warrant for defendant's arrest. Defendant surrendered herself to the jail nine days later, on June 14, 2014, at which time the warrant was served, returned, and filed.

¶ 72        On June 6, 2014, the day after the State filed its application to increase bond, the State charged defendant by information with committing "the offense of ESCAPE," in violation of section 31-6(a) of the Criminal Code of 2012 (720 ILCS 5/31-6(a) (West 2014)). This provision provides, in relevant part, that a person commits the felony offense of escape if he or she "knowingly fails to report to a penal institution." *Id*. The State alleged in the information that defendant "knowingly failed to report" to the Whiteside County Jail as required "in accordance with the terms and conditions of her Temporary Recognizance Bond."

---

        [4]An application to increase bond may be filed by the State pursuant to section 110-6 of the Code of Criminal Procedure of 1963 (725 ILCS 5/110-6 (West 2014)). Section 110-6(b) provides that a violation of "any special conditions of bail as ordered by the court shall constitute grounds for the court" to increase the amount of bail, alter the conditions of bail, or, in some instances, revoke bail. *Id.* § 110-6(b).

¶ 73    A stipulated bench trial was held on September 23, 2014.[5] Defense counsel argued to the court that defendant was not guilty of escape under section 31-6(a). Counsel observed that the portion of the statute that defines escape as "fail[ing] to report to a penal institution" applies only when the defendant has been "convicted of a felony." Counsel maintained that the failure to report provision has to "relate" to this felony. That is, according to counsel, a defendant is only guilty of failing to report to a penal institution under the escape statute if he or she fails to report for service of the sentence imposed for the felony. By way of example, counsel explained that if a defendant, after being convicted of a felony and sentenced to a term of imprisonment, is "given a stayed mittimus and they don't show up, that is an escape." If "a person doesn't comply with the condition of [a] bond, that is not an escape."

¶ 74    Counsel argued this had to be the correct understanding of the statute because otherwise the provision making it a felony offense to fail to report to a penal institution would apply to every defendant with a previous felony conviction. This would mean that every pretrial detainee with a felony conviction from a previous, unrelated offense, who is released on bond and who then violates the bond by failing to report, would be guilty of escape rather than a bond violation. Counsel contended this would be an absurd result and could not be what the legislature intended.

¶ 75    Turning to the facts of this case, defense counsel noted that defendant's obligation to report to the jail did not stem from any sentence imposed. Rather, the obligation stemmed solely from the terms of the recognizance bond. Therefore, according to defense counsel, while defendant failed to comply with the terms of her recognizance bond, her failure to return to the Whiteside County Jail was not a failure to report for service of sentence and, thus, was not an escape.

¶ 76    In response to this argument, the court asked the prosecutor why defendant, who had not yet been sentenced and was released on a recognizance bond, was charged with escape, while in other cases where a defendant is admitted to bail while awaiting sentencing, the failure to appear is simply a violation of the bail bond. The court asked why these identical situations were being treated differently. The prosecutor responded that she believed the escape statute applies in all situations where a defendant has previously been convicted of a felony and a bail bond requires the defendant to report to jail. The prosecutor "couldn't say why" it was sometimes charged as escape and sometimes not. The circuit court, after a brief recess, entered its ruling, finding defendant guilty of escape.

¶ 77    On appeal, the appellate court reversed defendant's conviction. The appellate court began its analysis by noting that failing to report to a penal institution under section 31-6(a) is an escape and that this court has long held that "[t]o commit the offense of escape, a defendant must first be in custody." 2017 IL App (3d) 140987, ¶ 11 (citing *Campa*, 217 Ill. 2d at 259). From this, the appellate court went on to explain that defendant could not have escaped from the Whiteside County Jail when she failed to report on June 5, 2014, because she was not in the custody of the jail at that time.

_____

[5]Prior to her trial for escape, on June 17, 2014, defendant's probation was revoked, and she was sentenced to three years' imprisonment and two years' mandatory supervised release for the original burglary offense and a concurrent, one-year term of imprisonment and one year mandatory supervised release for unlawful use of a credit card. See 730 ILCS 5/5-6-4(e) (West 2014) (when probation is revoked, the circuit court "may impose any other sentence that was available *** at the time of initial sentencing").

¶ 78    The appellate court noted that "custody" has been defined broadly by this court to include both physical and constructive custody. *Id.* Constructive custody means " 'custody of a person (such as a parolee or probationer) whose freedom is controlled by legal authority but who is not under direct physical control.' " *Beachem*, 229 Ill. 2d at 245 (quoting Black's Law Dictionary 412 (8th ed. 2004)). Thus, a defendant who fails to report to a prison to serve a sentence defies the legal authority granted the prison by the sentencing order and, therefore, escapes from the prison's constructive custody. In this case, however, the appellate court recognized that, when defendant was released on bond from the Whiteside County Jail, the jail had no legal authority of any sort, whether in the form of a sentencing order, mittimus, or order of commitment, that would have permitted the jail to detain defendant or control her movements. 2017 IL App (3d) 140987, ¶ 13. For this reason, defendant could not, and did not, disobey or defy any legal authority that the jail possessed over her when she failed to report back. Instead, the legal authority defendant violated was the circuit court's bond order—a violation the jail had no way of knowing occurred. Therefore, the appellate court concluded, defendant was not in the custody of the jail (either physical or constructive) and could not have escaped from that penal institution when she failed to report. Rather, she committed a bond violation. This appeal followed.

¶ 79                                          ANALYSIS
¶ 80                                              I
¶ 81    The question before this court is whether defendant's knowing failure to report to the Whiteside County Jail as required by the terms of her recognizance bond constitutes an escape as defined under section 31-6(a) of the Criminal Code of 2012 (720 ILCS 5/31-6(a) (West 2014)). Section 31-6(a) provides:

> "(a) A person convicted of a felony or charged with the commission of a felony *** who intentionally escapes from any penal institution or from the custody of an employee of that institution commits a Class 2 felony; however, a person convicted of a felony *** who knowingly fails to report to a penal institution or to report for periodic imprisonment at any time or knowingly fails to return from furlough or from work and day release or who knowingly fails to abide by the terms of home confinement is guilty of a Class 3 felony." *Id.*

¶ 82    The State contends the appellate court erred in reversing defendant's conviction. According to the State, the plain language of the escape statute requires only that the State prove the defendant knowingly failed to report to a penal institution, regardless of why or how the obligation to report was imposed. In other words, in the State's view, any and all failures to report to a penal institution are made felony offenses by the escape statute, regardless of whether the defendant is in the constructive custody of the penal institution. In so arguing, the State takes a dictionary approach to statutory interpretation. The word "report" means "to present oneself." Webster's Third New International Dictionary 1925 (1993). Defendant did not present herself to the Whiteside County Jail on the day of her discharge from the Margaret Stutsman Lodge. According to the State, "that should be the end of the inquiry."

¶ 83    Defendant, in response, argues for a contextual reading of the term "fails to report to a penal institution." Defendant maintains that, when read in context, it is clear that the term "fails to report to a penal institution" is meant to apply only in those instances when a convicted

defendant fails to report to the penal institution for service of his or her sentence. This might occur, for example, when a defendant's sentence of incarceration is stayed by the circuit court for a short time so that the defendant may attend to a personal or family matter before beginning to serve the sentence imposed and the defendant is ordered to report to prison sometime later. If the defendant does not report, then he or she will have escaped from the lawful authority of the prison to detain and control the defendant granted by the sentencing order, *i.e.*, the defendant will have escaped from the constructive custody of the prison. Defendant maintains that it is only in this situation that the failure to report to a penal institution under section 31-6(a) constitutes an escape. I agree.

¶ 84    Determining the meaning of the term "fails to report to a penal institution" in section 31-6(a) presents an issue of statutory interpretation. The fundamental rule of statutory interpretation is to ascertain and give effect to the legislature's intent. *People v. Ward*, 215 Ill. 2d 317, 324 (2005). The best indicator of legislative intent is the statutory language, given its plain and ordinary meaning. *People v. Alexander*, 204 Ill. 2d 472, 485 (2003). Where the language is clear and unambiguous, it is given effect as written without resort to other aids of statutory interpretation. *Peterson v. Wallach*, 198 Ill. 2d 439, 445 (2002).

¶ 85    Contrary to the State's contentions, determining whether a statutory "term is unambiguous *** does not turn solely on dictionary definitions of its component words." *Yates v. United States*, 574 U.S. ___, ___, 135 S. Ct. 1074, 1081 (2015). Instead, "[t]he plainness or ambiguity of statutory language is determined [not only] by reference to the language itself, [but also by] the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997). In other words, the plain meaning rule requires that statutory terms always be considered in context. As the United States Supreme Court has stated, it is a "fundamental principle of statutory construction (and, indeed, of language itself) that the meaning of a word cannot be determined in isolation, but must be drawn from the context in which it is used. [Citations.]" *Deal v. United States*, 508 U.S. 129, 132 (1993).

¶ 86    *Corbett v. County of Lake*, 2017 IL 121536, illustrates this point. In *Corbett* this court rejected a dictionary definition of the word "trail." Based on the context of the statute at issue, we concluded that the word "trail" meant "primitive, rustic, or unimproved trail," despite the fact that the words primitive, rustic, and unimproved did not appear in the statute. In so holding, we emphasized that "dissecting an individual word or phrase from a statutory provision and mechanically applying to it a dictionary definition is clearly not the best way of ascertaining legislative intent." *Id.* ¶ 28; see also, *e.g.*, *Yates*, 574 U.S. at ___, 135 S. Ct. at 1087 (holding, based on statutory context, that the term "tangible object" does not include fish); *Gustafson v. Alloyd Co.*, 513 U.S. 561, 575 (1995) (based on statutory context, the term "any communication" means only public communication); *United States v. Alvarez-Sanchez*, 511 U.S. 350, 358 (1994) (based on statutory context, the term "arrest or other detention" means only an arrest or detention for a violation of federal law).

¶ 87    When the term "fails to report to a penal institution" is read in context of the escape statute, as it must be, it is clear that defendant's interpretation of the term is correct. First, and foremost, failing to report to a penal institution is, by definition, a type of escape. For almost 40 years, since *Simmons*, 88 Ill. 2d 270, this court has held that the plain and ordinary meaning of the

term "escape," as employed in the escape statute, means an intentional and unauthorized absence of a committed person from either physical or constructive custody.

¶ 88 In *Simmons*, this court considered whether a defendant who fails to return from an unaccompanied day release from a penal institution may be prosecuted for the offense of escape under section 31-6(a). The defendant in *Simmons* was committed to the Department of Corrections after being sentenced on several felonies. *Id.* at 271. He was eventually transferred to the Peoria Community Correctional Center and, on one occasion, was allowed six hours of "independent day release" to go shopping. *Id.* The defendant never returned from his shopping trip and was thereafter charged and convicted of escape under section 31-6(a). *Id.* This court affirmed. *Id.* at 279.

¶ 89 At the time of the defendant's offense in *Simmons*, paragraph (a) of the escape statute contained only the first portion of the current statute. That is, the statute provided only that " '(a) A person convicted of a felony, or charged with the commission of a felony who intentionally escapes from any penal institution commits a Class 2 felony.' " *Id.* at 272 (quoting Ill. Rev. Stat. 1977, ch. 38, ¶ 31-6(a)). Thus, to determine whether the defendant was properly found guilty, this court had to define the meaning of the term "escape." This court held that "escape," as used in section 31-6(a), should be given a "broad meaning." *Id.* at 273. Borrowing a definition taken from the Unified Code of Corrections, this court held that "escape" means an " 'intentional and unauthorized absence' of a committed person from the custody" of a penal institution. *Id.* at 272 (quoting Ill. Rev. Stat. 1977, ch. 38, ¶ 1003-1-2(i)).

¶ 90 This court then went on to hold that the defendant had been committed to the Peoria Community Correctional Center, a penal institution, and that he escaped from the custody of that institution when he failed to return from his shopping trip. The court explained:

"However much the limits of his confinement were temporarily enlarged, or the restrictions on his conduct temporarily lessened, he was still legally in the custody of the Center, and *had a legal duty to submit to that custody*. When he exceeded the lawful limits of his liberty, whether by stepping across the invisible boundary around the shopping center or by standing still while the boundary, with the passage of time, shrank to the physical confines of the Peoria Community Correctional Center itself, he escaped from the Center." (Emphasis added.) *Id.* at 273-74.

The *Simmons* court recognized that the defendant, because he was still serving a sentence of incarceration, had a legal duty to submit to the authority of the Peoria Community Correctional Center, even if at times he was not physically within the confines of the center. This principle is known as constructive custody. *Beachem*, 229 Ill. 2d at 245.

¶ 91 *Simmons* expressly held that a failure to return is an escape from *custody* and, in so doing, adopted a straightforward principle: When a defendant is committed to a penal institution by virtue of a sentencing order, that order gives the institution the legal right to physically detain and control the defendant until the conclusion of his sentence. If, while serving his sentence, the defendant is temporarily released from physical custody and then fails to return to the institution, he has escaped from the institution's lawful authority, *i.e.*, escaped from constructive custody. As the *Simmons* court stated, when a defendant in these circumstances fails to return, he is doing nothing less than "evading his punishment" and is, therefore, guilty of escape. *Simmons*, 88 Ill. 2d at 278.

- 18 -

¶ 92    Since *Simmons*, this court has repeatedly reaffirmed that, to be guilty of escape under section 31-6(a), a defendant must absent himself from physical or constructive custody. In *People v. Marble*, 91 Ill. 2d 242 (1982), this court repeated the definition of escape adopted in *Simmons* and held that a defendant serving a term of imprisonment who fails to return from work release and a defendant serving a term of imprisonment who fails to return from an unescorted furlough are both guilty of escaping from the custody of a penal institution and are, therefore, guilty of escape under section 31-6(a).[6]

¶ 93    In *Campa*, 217 Ill. 2d 243, this court again confirmed that escape is defined as an unauthorized absence from physical or constructive custody. In *Campa*, this court addressed whether a defendant in a county sheriff's day reporting program was in custody for purposes of the speedy trial statute. In holding that he was, we relied heavily on the reasoning of *Simmons* and *Marble*. *Id.* at 255-59. We also examined the legislative history of the escape statute in detail—including the provision that defines escape as a failure to report to a penal institution—and expressly reaffirmed "that the failure to report for imprisonment constitutes escape." *Id.* at 259. We then stated the following:

> "Since escape is the unauthorized departure from custody (*Simmons*, 88 Ill. 2d at 272-73), a defendant cannot escape unless he is first in custody. Thus, reference to the escape provision of the Criminal Code, and the amendments thereto, supports our construction of the term 'custody' as used in the speedy-trial statute. The escape statute shows that the legislature intended the crime of escape to evolve with the changing terms of detention used as part of the programs at our correctional institutions. A defendant must necessarily be in 'custody' while participating in these programs if he is to be held accountable for 'escape' for failure to comply with the terms of the programs." *Id.*

This understanding of the escape statute was confirmed yet again in *Beachem* where, once more, this court unanimously held that a " 'defendant cannot escape unless he is first in custody' " (*Beachem*, 229 Ill. 2d at 253 (quoting *Campa*, 217 Ill. 2d at 259)) and once more reaffirmed that escape from custody, whether physical or constructive, is the unifying principle that underlies all the forms of escape set forth in section 31-6(a).

¶ 94    For almost 40 years, this court has held that the plain and ordinary meaning of escape under section 31-6(a) means an intentional, unauthorized departure from physical or constructive custody. Failing to report to a penal institution is a type of escape. Thus, the State's contention that this provision has nothing to do with constructive custody cannot be reconciled with this court's long-standing holdings regarding the plain meaning of the term "escape" as used in the escape statute. This alone is reason to reject the State's interpretation of section 31-6(a).

¶ 95    And there are additional concerns with the State's statutory analysis—it is also at odds with the principle of *noscitur a sociis* (a word is known by the company it keeps). When considering statutory context, we rely on this principle to "avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words, thus giving unintended breadth" to legislative enactments. (Internal quotation marks omitted.) *Gustafson*, 513 U.S. at 575; see also *Misch v. Russell*, 136 Ill. 22, 25 (1891) ("general and specific words which are capable of an

---

[6]In 1983, shortly after *Simmons* and *Marble* were decided, the General Assembly added language to the escape statute that codified the decisions in those cases.

analogous meaning being associated together, take color from each other, so that the general words are restricted to a sense analogous to the less general").

¶ 96    Here, the second portion of section 36-1(a) (the portion after the semicolon) lists several other situations, in addition to failing to report to a penal institution, in which the failure to report or return is deemed an escape. These are sentences of periodic imprisonment (730 ILCS 5/5-7-1 (West 2014)), furloughs (*id.* § 3-11-1), work and day releases (*id.* §§ 13-1 to 13-6), and terms of home confinement (*id.* § 5-6-3(b)(10)). All these statutory provisions address instances where a defendant's failure to return or report would constitute a violation of a sentence and, thus, a breach of constructive custody. If, for example, a defendant is sentenced to a term of periodic imprisonment but then fails to report for the first required day of custody, then she has escaped from the lawful authority of the penal institution to control her movements granted by the circuit court's sentencing order. In other words, just as in *Simmons* and *Marble*, she has escaped from the constructive custody of the penal institution. *Simmons*, 88 Ill. 2d 270; *Marble*, 91 Ill. 2d 242. The same is also true of furloughs, work and day release, and home confinement.

¶ 97    Given the context in which it appears, it is apparent the legislature intended the term "fails to report to a penal institution" to apply only when a defendant has been sentenced on a felony conviction and then fails to report to the penal institution for service of that sentence. In this situation, as in the other situations listed after the semicolon in the statute, the defendant would be in breach of constructive custody and, therefore, would be guilty of escape. To hold otherwise would require us to ignore the principle of *noscitur a sociis* and disregard the context in which the term "fails to report to a penal institution" appears. This would give an "unintended breadth" (*Gustafson*, 513 U.S. at 575) to the term that the legislature could not reasonably have intended.

¶ 98    Legislative history further confirms that the term "fails to report to a penal institution" applies only when a defendant fails to report for service of his sentence. In 1985, in Public Act 84-1083 (eff. Dec. 2, 1985), the General Assembly amended section 31-6(a) of the escape statute to add both the failure to report to a penal institution and the failure to report for periodic imprisonment provisions. Public Act 84-1083 began its life as House Bill 332. This bill added the language making it an offense to fail to report for periodic imprisonment. Representative Cullerton explained:

> "Right. I just thought I'd try to clarify if there's any confusion with regard to the Amendment. The purpose of the Bill was to provide that if someone was sentenced to periodic imprisonment and they didn't show up for the first day that they were suppose[d] to appear that *we deem that the offense of escape*." (Emphasis added.) 84th Ill. Gen. Assem., House Proceedings, Mar. 13, 1985, at 33 (statements of Representative Cullerton).

¶ 99    Senator Smith offered similar statements:

> "House Bill 332 covers a gap. [It] amends the Criminal Code for failure to report for periodic imprisonment. Someone who has *received a sentence of periodic imprisonment* and if they fail to report to *begin their sentence*, they have committed a crime ***. Nothing in the law presently makes it a crime for not showing up for the first day." (Emphases added.) 84th Ill. Gen. Assem., Senate Proceedings, June 5, 1985, at 17 (statements of Senator Smith).

¶ 100    Subsequently, House Bill 332 was substituted with another, identical bill, Senate Bill 844. That bill was adopted by both houses and sent to then-Governor Thompson, who exercised his amendatory veto. In his veto message, Governor Thompson expressed full agreement with Senate Bill 844 but recommended that the legislature add to the bill the language "fails to report to a penal institution." Journal of the Senate of the 84th Ill. Gen. Assem., at 7162; see I Final Legislative Synopsis and Digest of the 84th Ill. Gen. Assem. (No. 20), at 537. This recommendation was approved by both houses. Senator Dudycz explained the Governor's recommendation when it was presented to the Senate:

> "Thank you Mr. President. The Governor's recommendation adds into the escape offense the failure to report to jail *after being sentenced*. I ask for a favorable vote on the motion to accept the Governor's recommendations for change." (Emphasis added.) 84th Ill. Gen. Assem., Senate Proceedings, Oct. 16, 1985, at 78 (statements of Senator Dudycz).

¶ 101    We presume that the legislature amends a statute with knowledge of judicial decisions interpreting the statute. *Hubble v. Bi-State Development Agency of the Illinois-Missouri Metropolitan District*, 238 Ill. 2d 262, 273 (2010). Moreover, once " 'this court has construed a statute, that construction becomes, in effect, a part of the statute' " until the General Assembly changes it. *Village of Vernon Hills v. Heelan*, 2015 IL 118170, ¶ 19 (quoting *Mitchell v. Mahin*, 51 Ill. 2d 452, 456 (1972)). Clearly, at the time both of the failure to report provisions were added to section 31-6(a) of the escape statute, it was understood by the General Assembly that escape means an intentional and unauthorized absence of a committed person from either physical or constructive custody. And clearly, it was also understood by the General Assembly that the failure to report provisions were forms of escape, based on the failure of the defendant to comply with the authority granted a penal institution by a *sentencing order*. Accordingly, the General Assembly knew, as explained in *Simmons* and *Marble*, that the failure to report, like the failure to return, is a breach of constructive custody. Indeed, Senator Dudycz's comments eliminate any doubt on this point.

¶ 102    And there is additional support for defendant's construction of the term "fails to report to a penal institution." This term only applies to those defendants who have been "convicted" of a felony. 720 ILCS 5/31-6(a) (West 2014). The word "convicted" does not have a fixed meaning. Depending on the context, it may refer to an adjudication of guilt or an adjudication of guilt and imposition of sentence. *People v. Woods*, 193 Ill. 2d 483, 487-88 (2000). The Criminal Code of 2012 itself defines the term "conviction" as "a *judgment* of conviction or sentence entered upon a plea of guilty or upon a verdict or finding of guilty of an offense, rendered by a legally constituted jury or by a court of competent jurisdiction authorized to try the case without a jury." (Emphasis added.) 720 ILCS 5/2-5 (West 2014). The word "judgment," in turn, is defined as "an adjudication by the court that the defendant is guilty or not guilty and *if the adjudication is that the defendant is guilty it includes the sentence pronounced by the court*." (Emphasis added.) 725 ILCS 5/102-14 (West 2014).

¶ 103    Nothing in the context of the escape statute suggests that the legislature intended to depart from the statutory definitions of the words "convicted" and "judgment," and nothing suggests that the word "convicted" as used in the escape statute means only an adjudication of guilt. Thus, the term "fails to report to a penal institution" applies only to those defendants who have been "convicted" of a felony, *i.e.*, adjudicated guilty *and* sentenced to a term of incarceration.

Further underscoring this point is the fact that the first portion of section 31-6(a) (which addresses the physical escape from the four walls of a penal institution) states that it applies to those persons who have been "convicted of a felony or charged with the commission of a felony." 720 ILCS 5/31-6(a) (West 2014). The statutory meaning is apparent. The first portion of section 31-6(a) applies both to (1) those persons who are in a penal institution because they have been charged with a felony offense and are awaiting trial and to (2) those who are in a penal institution to serve a sentence. However, the second portion of section 31-6(a) applies only to those persons who have been sentenced to a term of incarceration. At the time she failed to return to the Whiteside County Jail, defendant in this case had not been sentenced to a term of incarceration, and the jail had no legal authority to detain her or control her movements. Accordingly, she was not "convicted" within the meaning of the escape statute and could not be guilty of failing to report.

¶ 104    The State's interpretation of the term "fails to report to a penal institution" also omits any consideration of section 110-2 of the Code of Criminal Procedure of 1963 (725 ILCS 5/110-2 (West 2014)). This provision governs recognizance bonds, the type of bond under which defendant was released, and provides explicit instructions on how to proceed if the defendant fails to appear as required by the bond. Section 110-2 states:

> "A failure to appear as required by such recognizance shall constitute an offense subject to the penalty provided in Section 32-10 of the Criminal Code of 2012 [(720 ILCS 5/32-10 (West 2014))] for violation of the bail bond, and any obligated sum fixed in the recognizance shall be forfeited and collected in accordance with subsection (g) of Section 110-7 of this Code [(725 ILCS 5/110-7(g) (West 2014))]." *Id.*

¶ 105    Subsection (g) of section 110-7 of the Code of Criminal Procedure of 1963 states that an order declaring the bail to be forfeited shall be entered by the court if the defendant does not comply with the conditions of the bail bond. Importantly, however, no monetary judgment may be entered for the State until 30 days have elapsed. *Id.* § 110-7(g). Similarly, section 32-10 of the Criminal Code of 2012, which is the statute that defines the criminal offense of "violation of bail bond," states that any person who has been admitted to bail and has incurred a forfeiture of the bail commits the offense of violation of bail bond but *only* if the person "fails to surrender himself or herself within 30 days following the date of the forfeiture." 720 ILCS 5/32-10(a) (West 2014).

¶ 106    Through its incorporation of section 32-10, section 110-2 provides a defendant who is released on a recognizance bond with a 30-day grace period after the return date set forth in the bond before the failure to return becomes a criminal offense. See *People v. Costa*, 2013 IL App (1st) 090833. Stated simply, a defendant has not committed a crime if she appears within 30 days of the return date. Defendant in this case was released on a recognizance bond and appeared nine days after the return date on the bond. According to section 110-2, she was entitled to a 30-day grace period and, thus, under the plain terms of that provision, was not guilty of any criminal offense.

¶ 107    In light of the grace period provided in section 110-2, it is apparent that failing to limit the failure to report provision to situations involving constructive custody, and applying it in all situations where a defendant is released on a recognizance bond, would create a statutory conflict: On the one hand, the legislature has stated in section 110-2 that a defendant who fails to appear on the due date of a recognizance bond has a 30-day grace period and that returning

9 days past the due date is not a criminal offense. Yet, on the other hand, according to the State, the legislature has also stated in the escape statute that a defendant who fails to appear on her due date does *not* have a 30-day grace period and that returning even 1 day past the due date is an immediate, felony offense.

¶ 108    This is not a minor problem. To avoid due process concerns, criminal statutes must give a person of ordinary intelligence a reasonable opportunity to know what conduct is prohibited so that he or she may act accordingly. *People v. Howard*, 2017 IL 120443, ¶ 25. The construction of the statute proposed by the State raises serious due process concerns because, under that construction, it is unclear whether defendant's conduct is actually criminal. See, *e.g.*, *State v. McKown*, 461 N.W.2d 720 (Minn. Ct. App. 1990).[7]

¶ 109    Furthermore, as defendant's trial counsel observed in the circuit court, the State's construction of the term "fails to report to a penal institution" leads to overly broad results. In the State's view, the term applies to every defendant who violates his bond by failing to report to a penal institution and who has a previous felony conviction. This means, according to the State, that every pretrial detainee with a felony conviction from a previous, unrelated offense who is released on bond and who then violates the bond by failing to report back to jail, would be guilty of escape rather than a bond violation. This would effectively nullify the violation of bond statute for pretrial detainees with a prior felony conviction. This cannot reasonably have been what the legislature intended.

¶ 110    We have an obligation, where reasonably possible, to construe statutes in such a way so as to affirm their constitutionality and avoid absurd results. *Howard*, 2017 IL 120443, ¶ 24. Limiting the term "fails to report to a penal institution" to situations involving constructive custody removes any concern regarding constitutional infirmity or absurd results and explains the relationship between the escape statute and section 110-2. The escape statute does not contain a 30-day grace period but, instead, treats failing to report to a penal institution as an immediate, felony offense. It does this because the statute applies only to those defendants who escape from the constructive custody of a penal institution after being committed to the institution following sentencing. In short, failing to report for service of sentence is a more serious offense than simply failing to report as required by a recognizance bond and, logically, is treated more seriously.

¶ 111    Finally, the State's contention that the term "fails to report to a penal institution" should be given the broadest construction disregards the rule of lenity. This rule provides that, when "a reasonable doubt persists about a statute's intended scope even *after* resort to 'the language and structure, legislative history, and motivating policies' of the statute" (emphasis in original) (*Moskal v. United States*, 498 U.S. 103, 108 (1990) (quoting *Bifulco v. United States*, 447 U.S. 381, 387 (1980))), we must resolve that doubt in favor of the defendant rather than imputing to the General Assembly an " 'undeclared will' " to criminalize conduct (*United States v. Santos*, 553 U.S. 507, 515 (2008) (quoting *Bell v. United States*, 349 U.S. 81, 83 (1955))). See *People v. Davis*, 199 Ill. 2d 130, 140 (2002) ("where a criminal statute is capable of two

---

[7]Defendant was never informed by any authority that her failure to return to the Whiteside County Jail could be prosecuted as an escape. In a letter written to the circuit court before her trial for escape, defendant stated that she knew she was violating her bond when she did not return to the jail and apologized for her actions. However, she stated that she "didn't realize I was committing another offense, especially escape."

constructions, courts must adopt the one that operates in favor of the accused"). The rule of lenity ensures that criminal statutes will provide fair warning of what constitutes criminal conduct, minimizes the risk of arbitrary enforcement, and strikes the appropriate balance between the legislature and the judicial branch in defining criminal liability. *Yates*, 574 U.S. at ___, 135 S. Ct. at 1088.

¶ 112    At a minimum, the points I have outlined above raise an objectively reasonable question as to whether a narrow or broad construction should be given to the term "fails to report to a penal institution" in the escape statute. Accordingly, the rule of lenity compels the conclusion that the term should be construed narrowly in favor of defendant.

¶ 113    In my view, the legislature's intent is clear. The term "fails to report to a penal institution" in the escape statute applies only when a convicted person escapes from constructive custody. This means the provision applies only when the person fails to report to the penal institution for service of sentence and not otherwise. In this case, defendant was ordered to return to the Whiteside County Jail by the terms of her recognizance bond, not a sentencing order. Defendant did not escape from the constructive custody of the jail. The judgment of the appellate court should, therefore, be affirmed.

¶ 114                                                          II

¶ 115    The majority, however, reverses the judgment of the appellate court. In so holding, the majority explains that

> "section 31-6(a) is divided into two independent clauses separated by a semicolon, with the second clause beginning with the word 'however.' The first clause contains an escape from custody provision, and the second clause includes a knowing failure to report provision. The word 'custody' appears only in the first provision, which involves escape from the custody of a penal institution or its employee. The word 'custody' is absent from the failure to report provision." *Supra* ¶ 23.

¶ 116    The majority then observes that, " '[w]hen the legislature includes particular language in one section of a statute but omits it in another section of the same statute, courts presume that the legislature acted intentionally and purposely in the inclusion or exclusion [citations] and that the legislature intended different meanings and results [citations].' " *Supra* ¶ 23 (quoting *Chicago Teachers Union, Local No. 1 v. Board of Education of the City of Chicago*, 2012 IL 112566, ¶ 24). From this, the majority concludes that it cannot "presume that the legislature intended to include" an element of custody in the definitions of escape that appear after the semicolon in section 31-6(a). *Supra* ¶ 24. The majority states that it "will not assign the same meaning to these two provisions of section 31-6(a) or engraft the custody element of the escape from custody provision onto the failure to report provision." *Supra* ¶ 24. In short, according to the majority, custody plays no role in any of the versions of escape that appear in the second portion of section 31-6(a) and, thus, is not an element of the offense at issue here. I disagree.

¶ 117    The concept of custody, specifically constructive custody, is inherent in each of the offenses listed after the semicolon in section 31-6(a). Apart from failing to report to a penal institution, the offenses listed are failing to report for a sentence of periodic imprisonment (730 ILCS 5/5-7-1 (West 2014)), failing to return from a furlough (*id.* § 3-11-1), failing to return from work or day release (*id.* §§ 13-1 to 13-6), and failing to abide by the terms of home confinement (*id.* § 5-6-3(b)(10)). In each of these situations, a sentence has been imposed on

- 24 -

the defendant. In each of these situations, the defendant's failure to return or report would constitute a violation of a sentence and, thus, *by definition* would amount to a breach of constructive custody. This was the point that was made in *Simmons*. If a defendant is sentenced to a term of periodic imprisonment, this means she has "a legal duty to submit to that custody." *Simmons*, 88 Ill. 2d at 273. If she fails to report for the first required day of custody, then she has escaped from the lawful authority of the penal institution to control her movements granted by the circuit court's sentencing order. That is, she has escaped from the constructive custody of the penal institution. *Simmons*, 88 Ill. 2d 270; *Marble*, 91 Ill. 2d 242. The same analysis also applies to furloughs, work and day release, and home confinement. Thus to state, as the majority does, that custody is not a part of any of the offenses listed in the second part of section 31-6(a) is plainly incorrect.

¶ 118 To be sure, the General Assembly has divided section 31-6(a) into two sections, separated by a semicolon. But this is not because the offenses listed after the semicolon are completely unrelated offenses that have nothing to do with long-standing concepts of custody or escape. Rather, these offenses are set off by a semicolon because they have been given a lesser penalty. Breaches of constructive custody, such as failing to return from a furlough or failing to report for periodic imprisonment, are inherently less dangerous acts than breaking out of the physical confines of a prison. It is therefore entirely appropriate and logical that the General Assembly would separate the two types of escape and penalize breaches of constructive custody as Class 3 felonies while penalizing breaches of physical custody as Class 2 felonies. See, *e.g.*, 83d Ill. Gen. Assem., House Proceedings, June 21, 1983, at 201 (statements of Representative Cullerton) (noting that it "makes sense" to provide a lesser penalty for someone who fails to return from work release than for someone who escapes from prison).

¶ 119 The majority fundamentally misconstrues the meaning of constructive custody and, therefore, incorrectly disregards the context of section 31-6(a). The term "fails to report to a penal institution" appears on a list that contains nothing but offenses that involve escape from constructive custody. There is no reason why the offense of failing to report to a penal institution should be interpreted any differently.

¶ 120 Other aspects of the majority's reasoning are equally unpersuasive. The majority agrees that, in section 31-6, "the legislature has forged a single offense of escape." *Supra* ¶ 22. Nor is there any dispute that this court has held, for close to 40 years, that the plain and ordinary meaning of the word "escape" means an intentional, unauthorized departure from either physical or constructive custody. Yet, with respect to the offenses of failing to report to a penal institution and failing to report for periodic imprisonment, the majority concludes that the "offense of escape *** does not include custody as an element." *Supra* ¶ 47. In other words, according to the majority, with respect to these provisions, "escape" does not mean "escape."

¶ 121 Recognizing this problem, the majority takes the exceptional step of "abrogat[ing]" a sentence from *Campa* that defines escape as the unauthorized departure from custody. *Supra* ¶ 41. This is problematic for several reasons. First, the definition set forth in *Campa* was taken from our earlier decision in *Simmons*, and the analysis and holding of *Simmons* rest on that understanding of escape. *Simmons*, 88 Ill. 2d at 272-73. Thus, the majority is not simply "abrogating" a sentence in a single opinion of this court, it is overruling long-standing precedent. The majority makes no mention of *stare decisis* and makes no attempt to justify its actions under that doctrine. Further, at the same time the majority abrogates *Campa* and

overrules *Simmons*, it leaves in place *Marble* and *Beachem*, two cases that also hold that escape is the unauthorized departure from custody. Thus, the majority's abrogation of *Campa*, instead of providing clarity, leaves the law of escape in a state of considerable confusion.

¶ 122     The majority takes extraordinary measures to reach the conclusion that the offense of failing to report to a penal institution does not contain a custody element. The majority unnecessarily overturns long-standing case law when, properly understood, our case law and section 31-6(a) are completely consistent.

¶ 123     The majority also points to legislative history to support its conclusion that custody is not a part of the offense of failing to report to a penal institution. Here, too, the majority errs. The majority quotes the following statement from Senator Smith:

> "House Bill 332 covers a gap. [It] amends the Criminal Code for failure to report for periodic imprisonment. Someone who has received a sentence of periodic imprisonment and if they fail to report to begin their sentence, they have committed a crime ***. Nothing in the law presently makes it a crime for not showing up for the first day." 84th Ill. Gen. Assem., Senate Proceedings, June 5, 1985, at 17 (statements of Senator Smith).

See *supra* ¶ 36. According to the majority, this statement shows the intent of the legislature to establish an offense called "escape" that has nothing to do with custody. *Supra* ¶¶ 36-43. However, the opposite is true. As Senator Smith stated, periodic imprisonment is a *sentence*. A person who fails to report for periodic imprisonment has, therefore, violated the terms of his or her sentence and evaded the lawful authority of the penal institution. This is the definition of a breach of constructive custody.

¶ 124     Further, the legislative history quoted by the majority addresses only the offense of failing to report for periodic imprisonment, not failing to report to a penal institution, the offense at issue here. And that leads to a troubling aspect of the majority opinion. There is one statement in the legislative record that relates directly to the offense of failing to report to a penal institution. After then-Governor Thompson proposed adding the language setting out the offense, Senator Dudycz stated the following:

> "Thank you Mr. President. The Governor's recommendation adds into the escape offense the failure to report to jail *after being sentenced*. I ask for a favorable vote on the motion to accept the Governor's recommendations for change." (Emphasis added.) 84th Ill. Gen. Assem., Senate Proceedings, Oct. 16, 1985, at 78 (statements of Senator Dudycz).

This statement should eliminate any doubt that the term "fails to report to a penal institution" means "fails to report for service of sentence." Yet the majority chooses not to mention this quote. There is no justification for this.

¶ 125     For the foregoing reasons, I respectfully dissent.

¶ 126     CHIEF JUSTICE KARMEIER and JUSTICE THEIS join in this dissent.