THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. D.R.R., Defendant-Appellant.

Second District   No. 2—92—0615

Opinion filed March 14, 1994.

G. Joseph Weller and Barbara Paschen, both of State Appellate Defender's Office, of Elgin, for appellant.

Douglas P. Floski, State's Attorney, of Oregon (William L. Browers, Robert J. Biderman, David E. Mannchen, and Norbert J. Goetten, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE QUETSCH delivered the opinion of the court:

The defendant, D.R.R., was charged with aggravated criminal sexual abuse (Ill. Rev. Stat. 1991, ch. 38, par. 12—16(c)(1)(i) (now 720 ILCS 5/12—16(c)(1)(i) (West 1992))) for committing an act of sexual conduct with his four-year-old daughter, E.R., by fondling her vaginal area for the purpose of his sexual arousal. He was also charged with aggravated criminal sexual assault (Ill. Rev. Stat. 1991, ch. 38, par. 12—14(b)(1) (now 720 ILCS 5/12—14(b)(1) (West 1992))) for committing an act of sexual penetration with E.R. by placing his penis in her mouth. A jury in Ogle County found the defendant guilty of aggravated criminal sexual abuse but not guilty of aggravated criminal sexual assault. He was later sentenced to five years' imprisonment. The defendant appeals, contending that: (1) the verdicts are logically inconsistent and therefore the prosecution failed to prove him guilty beyond a reasonable doubt of aggravated criminal sexual abuse; and (2) the trial court erred in allowing hearsay testimony about E.R.'s statements to her mother, grandmother, a police officer, and doctor regarding details of the offense. We affirm.

Prior to trial, the court held a hearing pursuant to section 115—10 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1991, ch. 38, par. 115—10 (now 725 ILCS 5/115—10 (West 1992))) to determine whether to admit statements made by E.R. to her mother, grandmother, and Sergeant Jason White identifying the defendant as her abuser. Section 115—10 states in relevant part:

"(a) In a prosecution for a sexual act perpetrated upon a child under the age of 13, including but not limited to prosecutions for violations of Sections 12—13 through 12—16 of the Criminal Code of 1961, the following evidence shall be admitted as an exception to the hearsay rule:

***

(2) testimony of an out of court statement made by such child describing any complaint of such act or matter or detail pertaining to any act which is an element of an offense which is the subject of a prosecution for a sexual act perpetrated upon a child.

(b) Such testimony shall only be admitted if:

(1) The court finds in a hearing conducted outside the presence of the jury that the time, content, and circumstances of the statement provide sufficient safeguards of reliability; and

(2) The child either:

(A) Testifies at the proceeding; or

(B) Is unavailable as a witness and there is corroborative evidence of the act which is the subject of the statement." Ill. Rev. Stat. 1991, ch. 38, pars. 115—10(a), (b) (now 725 ILCS 5/115—10(a), (b) (West 1992)).

At the hearing, A.C. testified that on December 8, 1990, her three children went to visit their father (the defendant) at his mother's house. When they returned home on December 9, E.R. was holding her vagina. A.C. decided to have her mother, G.C., a nurse's aid, look at E.R. A.C. and G.C. examined E.R. and observed that her vaginal area was red and inflamed. G.C. asked E.R., "[W]ho did this to you[?]" and E.R. stated that it was her twin brother. G.C. said "no, I don't think so" and E.R. then stated that it was "[the defendant] probably with his long fingernails."

G.C. testified that A.C. brought E.R. to see her on December 9. Soon after they arrived, E.R. began holding herself. G.C. examined E.R. and found that the vaginal area was red and swollen and had scratch marks on it. She asked E.R., "[W]ho did this to you[?]" and E.R. responded that it was her twin brother. G.C. again asked, "[W]ho did this to you[?]" and E.R. then said "no, grandma, [the defendant] did that to me with his long fingernails."

Jason White, a patrol sergeant for the Village of Mt. Morris, testified that on December 14 he and Judith Witkowski, a DCFS caseworker for the Department of Children and Family Services (DCFS), went to E.R.'s house to investigate a report of sexual abuse. Sergeant White and Witkowski spoke with E.R. in her bedroom. During this conversation, he touched one of E.R's dolls in the crotch area and asked E.R. if this was a good touch or a bad touch. E.R. said that this was a bad touch. Sergeant White then asked her if anyone had ever touched her there, and E.R. replied that the defendant had touched her in that area.

The trial court subsequently determined that the time, content, and circumstances of E.R.'s statements to her mother, grandmother, and Sergeant White provided sufficient safeguards of reliability. The court ruled that these statements would therefore be admissible. The testimony of A.C., G.C., and Sergeant White at trial was consistent with their testimony at the section 115—10 hearing.

At trial, E.R. testified that the defendant had touched her with his finger on a part of the body which she did not want to be touched. When she was asked where on her body the defendant had touched her, E.R. pointed to her crotch. When she was asked if the defendant had touched any other part of her body, E.R. said "no."

Doctor Kristin Petty, a family practitioner, examined E.R. on December 19, 1990, in order to determine whether she had been sexually abused. Doctor Petty testified that E.R. told her that the defendant touched her "privates" with his fingers and penis. E.R. also said that the defendant had placed his finger in her rectum. E.R. did not say when these touches occurred, but Doctor Petty stated that it seemed to her that it had happened more than once. E.R. told Doctor Petty that on one such occasion C.R. (the defendant's mother) had walked in while he was abusing her and had gotten very angry.

Doctor Petty's physical exam revealed that E.R. had a four-millimeter opening of her labia minora, which is one-millimeter more than normal for a child her age. Such an opening shows that there has been penetration of some sort in the vagina. Doctor Petty also found a lot of redness and swelling in the vaginal area and an old scar or laceration on the hymen. Although the redness could have been caused by a yeast infection, the scar showed that there had been an attempted penetration of the vagina.

Doctor Petty also tested E.R. for gonorrhea. The tests revealed that E.R. had gonorrhea in the throat, but not in the vagina or rectum. Doctor Petty testified that the presence of gonorrhea bacteria in E.R.'s throat could only have come from an act of oral sex. Although E.R. had not mentioned any acts of oral sex, Doctor Petty stated that it is not unusual for a child not to relate such information.

Doctor David Nyquist, a family practitioner in the Rochelle/ Ashton area, testified that on January 25, 1991, the defendant came to his clinic and requested that he be tested for gonorrhea. Doctor Nyquist referred him to the Rochelle Hospital for tests, where the defendant tested negative for gonorrhea.

Doctor Alan Hirsch, a clinical psychologist at Mt. Sinai Hospital, testified that a "team" consisting of a psychologist, child development specialist, physician, and social worker evaluated E.R. for five days at Mt. Sinai in May 1991. Doctor Hirsch interviewed E.R. on May 20, 1991, during which time she was very guarded, tense, and anxious. E.R. told Hirsch that the defendant had stuck his fingers in her vagina. Doctor Hirsch stated that the difficulty he had in getting E.R. to talk to him made him believe that she had not been "coached" to make up the allegations of sexual abuse. He also testified that after evaluating E.R., the "team" believed that she had been sexually abused by the defendant.

On cross-examination, Doctor Hirsch stated that E.R. never mentioned anything about oral sex. He also admitted that E.R. had told one of the team members, Yolanda Fuentes, that the abuse

allegations were "the story my mommy told me to tell." However, Doctor Hirsch stated that the team "overrode that point" because they could expect some disorganization in thought given E.R.'s young age and the fact that she was "exhausted" when she made that statement.

Yolanda Fuentes, a child development specialist at Mt. Sinai Hospital, interviewed E.R. on May 23, 1991. Fuentes asked E.R. the name of her father, and she replied "Daddy Ronnie" (her stepfather). E.R. said that Daddy Ronnie drank a lot of beer and punched her mom in the face. Fuentes asked E.R. if anyone had touched "where you don't like it" and E.R. replied "yes [the defendant]." When asked what the defendant had touched her with, E.R. replied "his donnie, first his donnie, first dad." Fuentes testified that she believed "first dad" referred to the defendant (E.R.'s biological father). Fuentes stated that she asked E.R. if anything came out of the donnie, and E.R. said "yes, blood." E.R. said that this occurred at the defendant's house and that the defendant's mother had seen it happen. E.R. also told Fuentes that the defendant had touched her inside her donnie thousands of times. However, E.R. then stated that "it's a story mom told me that [the defendant] touch my privates." Following that statement, though, E.R. again told Fuentes that the defendant had touched her on a part of the body which she did not want to be touched and that he had put his donnie inside her mouth. When Fuentes asked E.R. whether anything had come out of the donnie, E.R. replied "blood, [the defendant] said it was good blood."

On cross-examination, Fuentes testified that she agreed with the team finding that E.R. had been sexually abused by the defendant. Fuentes stated that a possible reason why E.R. had said that the abuse was a "story my mom told me" is that she was agitated and afraid that the defendant might hurt her.

Doctor Frank Cushing, a psychologist practicing in Rockford, testified that he had interviewed the defendant on behalf of the public defender's office. He stated that the defendant shows signs of obsessive-compulsive behavior and has a dependant personality disorder. However, Doctor Cushing could not reach a conclusion as to whether the defendant fits the profile for a child molester.

Doctor Cushing also faulted Mt. Sinai's method of evaluating E.R. He noted that the child had mentioned several males in her life, including her stepfather Ronnie, but that the Mt. Sinai team had not followed up on her relationship with them. He was also concerned that there was very little follow-up on E.R.'s statement that the abuse was a "story my mom told me."

The defendant testified that he had never touched any of his chil-

dren in the crotch area and that he had never had any sexual contact with E.R. The defendant's mother, C.R., testified that she had never seen the defendant act inappropriately with E.R. She also denied seeing the defendant sexually abuse E.R. on the weekend of December 8, 1990.

The jury found the defendant guilty of aggravated criminal sexual abuse for committing an act of sexual conduct with E.R. by fondling E.R.'s vaginal area for the purpose of his sexual arousal. The jury found the defendant not guilty of aggravated criminal sexual assault for committing an act of sexual penetration with E.R. by placing his penis in her mouth. The trial court later sentenced the defendant to five years' imprisonment, and he filed this timely appeal.

■ The defendant's first argument on appeal is that the evidence linking him to the aggravated criminal sexual assault is the same as that linking him to the aggravated criminal sexual abuse. Therefore, the verdicts of guilty of aggravated criminal sexual abuse but not guilty of aggravated criminal sexual assault are logically inconsistent.

We first note that verdicts are not required to be logically consistent as long as they are legally consistent. (*People v. Hairston* (1970), 46 Ill. 2d 348, 362, *cert. denied* (1971), 402 U.S. 972, 29 L. Ed. 2d 136, 91 S. Ct. 1658.) Verdicts are legally inconsistent where they necessarily involve the conclusion that the same essential elements of each offense were found both to exist and not to exist, and both offenses arise out of the same set of facts. *People v. Frias* (1983), 99 Ill. 2d 193.

In this case, the verdicts were not legally inconsistent since the two offenses with which the defendant was charged do not involve the same essential elements. The aggravated criminal sexual assault charge, of which the defendant was acquitted, required the State to prove that the defendant was 17 years of age or over and had committed an act of *sexual penetration* with a victim who was under 13 years of age when the act was committed. (Ill. Rev. Stat. 1991, ch. 38, par. 12—14(b)(1) (now 720 ILCS 5/12—14(b)(1) (West 1992)).) "Sexual penetration" is defined in relevant part as "any contact, however slight, between the sex organ of one person and the *** mouth *** of another person." Ill. Rev. Stat. 1991, ch. 38, par. 12—12(f) (now 720 ILCS 5/12—12(f) (West 1992)).

The aggravated criminal sexual abuse charge, of which the defendant was found guilty, required the State to prove that the defendant was 17 years of age or over and had committed an act of *sexual conduct* with a victim who was under 13 years of age when the act was committed. (Ill. Rev. Stat. 1991, ch. 38, par. 12—16(c)(1)(i) (now 720 ILCS 5/12—16(c)(1)(i) (West 1992)).) "Sexual conduct" is defined

in relevant part as the "intentional or knowing touching or fondling by the victim or the accused, either directly or through clothing, of *** any part of the body of a child under 13 years of age, for the purpose of sexual gratification or arousal of the victim or the accused." Ill. Rev. Stat. 1991, ch. 38, par. 12—12(e) (now 720 ILCS 5/12—12(e) (West 1992)).

Since by definition sexual conduct can be committed without sexual penetration, the crimes of aggravated criminal sexual abuse and aggravated criminal sexual assault do not consist of the same essential elements. Accordingly, a finding that sexual penetration between the defendant and his victim did not occur does not preclude a finding that sexual conduct between the defendant and the victim did occur. (See *People v. Finley* (1988), 178 Ill. App. 3d 301, 307.) Therefore, the defendant's conviction of aggravated criminal sexual abuse for committing an act of sexual conduct with E.R. is not legally inconsistent with his acquittal of aggravated criminal sexual assault for committing an act of sexual penetration with E.R.

Since the verdicts are not legally inconsistent, they do not *per se* require reversal even if they are logically inconsistent. (See *People v. Frias*, 99 Ill. 2d at 197; *People v. Jones* (1988), 174 Ill. App. 3d 737, 744.) However, we will still consider whether any logical inconsistency exists such as to raise a reasonable doubt of the defendant's guilt. *Jones*, 174 Ill. App. 3d at 744.

Verdicts are logically inconsistent when they can only be construed as an acceptance and rejection of the same theory of the case. (*People v. Murray* (1975), 34 Ill. App. 3d 521, 532.) Here, the State's theory of the case is that the defendant committed aggravated criminal sexual abuse against E.R. by fondling her vaginal area and that he committed aggravated criminal sexual assault against E.R. by forcing her to perform an act of fellatio on him.

We find that the jury's verdicts of guilty of aggravated criminal sexual abuse and not guilty of aggravated criminal sexual assault are not logically inconsistent because there was evidence presented at trial from which the jury could conclude that the defendant fondled E.R.'s vaginal area but did not have oral sex with her. Such evidence included E.R.'s testimony that the defendant only touched her in the vaginal area. Further, E.R.'s mother, grandmother, and Sergeant White testified only that E.R. had complained about the defendant's touching her in the vagina. Doctor Petty and Doctor Hirsch also testified that although E.R. complained that the defendant had touched her in the vaginal area, she had not accused the defendant of engaging in oral sex with her. Finally, the jury may have also considered the evidence that E.R. tested positive for gonorrhea of the

throat, but the defendant tested negative for gonorrhea. Thus, the fact that the jury found that the defendant had not engaged in oral sex with E.R. did not necessarily constitute a rejection of the theory that he fondled her vaginal area. The verdicts of not guilty of aggravated criminal sexual assault but guilty of aggravated criminal sexual abuse can stand.

■ The defendant next contends that even if the verdicts are not inconsistent, the State still failed to prove beyond a reasonable doubt that he committed aggravated criminal sexual abuse by fondling E.R.'s vaginal area. The applicable standard of review is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Whittenmyer* (1992), 151 Ill. 2d 175, 190.

We conclude that the jury in this case had sufficient evidence to find the defendant guilty of aggravated criminal sexual abuse. The evidence presented at trial indicated that E.R. spent the weekend of December 8, 1990, with the defendant and his mother (C.R.). When E.R. returned home on December 9, she complained that her vaginal area hurt. E.R.'s mother and grandmother (G.C.) observed that the child's vagina was red and swollen. E.R. told her mother, grandmother (G.C.), Sergeant White, Doctor Petty, Doctor Hirsch, and Yolanda Fuentes that the defendant was the person who had abused her. Doctor Petty's physical examination revealed that E.R. had been abused, and Doctor Hirsch and Yolanda Fuentes testified that they believed that the defendant was the abuser. Viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt.

■ The defendant's next argument is that the trial court erred in admitting E.R.'s statements to her mother, grandmother (G.C.), and Officer Jason White identifying the defendant as her abuser. The defendant contends that the trial court erred in determining that the time, content, and circumstances surrounding the statements provided sufficient safeguards of reliability so as to render them admissible under section 115—10 of the Code of Criminal Procedure of 1963. (Ill. Rev. Stat. 1991, ch. 38, par. 115—10 (now 725 ILCS 5/115—10 (West 1992)).) We note, though, that the defendant has waived this argument by not raising the issue of the reliability of E.R.'s statements to her mother and grandmother in his post-trial motion and by not objecting to Sergeant White's testimony at trial. *People v. Enoch* (1988), 122 Ill. 2d 176, 186.

Furthermore, the trial court did not commit plain error (134 Ill. 2d R. 615(a)) by admitting the hearsay testimony about E.R.'s

statements. The defendant argues that based upon our decision in *People v. West* (1992), 234 Ill. App. 3d 578, this cause should be remanded for the trial court to set forth its reasons for finding that the time, content, and circumstances surrounding E.R.'s statements provide sufficient safeguards of reliability. However, our supreme court has recently reversed *West* and held that trial courts are not required to state the reasons for such a finding. *People v. West* (1994), 158 Ill. 2d 155, 164.

■ The defendant further contends that the record indicates that E.R.'s statements to her mother, grandmother, and Sergeant White were not reliable. When conducting a reliability hearing, a trial court evaluates the totality of the circumstances surrounding the making of the hearsay statement. (*West*, 158 Ill. 2d at 164.) Factors that are important in making the determination include: the child's spontaneous and consistent repetitions of the incident; the child's mental state; use of terminology unexpected of a child of similar age; and the lack of a motive to lie. (*West*, 158 Ill. 2d at 164.) A trial court's finding will not be disturbed absent an abuse of discretion. *West*, 158 Ill. 2d at 165.

The record before us indicates that the trial court did not abuse its discretion in determining that E.R.'s statements were reliable. We first consider the timing of the statements. E.R. talked with her mother and grandmother about the sexual abuse on the same night she returned from visiting the defendant. E.R. spoke with Sergeant White five days later. E.R. thus recounted the incident far more quickly than other minor sexual abuse victims whose statements have been deemed sufficiently reliable to satisfy section 115—10. See *People v. Edwards* (1992), 224 Ill. App. 3d 1017, 1031 (three-month delay); *People v. Anderson* (1992), 225 Ill. App. 3d 636 (one-month delay).

We next consider the content of E.R.'s statements. E.R. initially told her mother and grandmother that her twin brother had abused her. However, when E.R.'s grandmother again asked, "[W]ho did this to you[?]" E.R. said "no, grandma, [the defendant] did that to me with his long fingernails." Although E.R.'s initial statements reflect some confusion as to the identity of her abuser, she later told Sergeant White that the defendant was the person who had touched her in the vaginal area. These statements identifying the defendant as the person who abused her were consistent with E.R.'s trial testimony and that of Doctor Petty, Doctor Hirsch, and Yolanda Fuentes.

E.R.'s initial statement identifying her brother as the abuser did not automatically invalidate her otherwise consistent statements

identifying the defendant as the assailant. Rather, her initial identification of her brother was just one factor for the trial court to consider when it evaluated the totality of the circumstances and determined that the statements were admissible under section 115—10 of the Code.

Other circumstances support the trial court's finding of reliability. The questions asked of E.R. by her mother, grandmother, and Sergeant White were not unduly suggestive or coercive. (*People v. C.H.* (1992), 237 Ill. App. 3d 462, 469.) Also, E.R. used language consistent with that of a four-year-child, and there is no evidence of any motive on E.R.'s part to fabricate the allegations. We find that the time, content, and circumstances surrounding the hearsay statements provided sufficient safeguards of reliability, and the trial court therefore did not err in admitting them.

The defendant argues that E.R.'s hearsay statements are not reliable because there is evidence which suggests that E.R.'s mother, A.C., contrived to have her daughter falsely accuse the defendant of sexual abuse. The defendant's argument is based on inconsistencies between A.C.'s testimony at a preliminary hearing and her testimony at the section 115—10 hearing. However, during the section 115—10 hearing, the defendant did not seek to introduce A.C.'s prior inconsistent statements. Although they are a part of the record on appeal, we may not consider such statements since they were not introduced at the section 115—10 hearing. See *People v. Sherrod* (1991), 220 Ill. App. 3d 429, 436; *People v. Owens* (1977), 46 Ill. App. 3d 978, 988.

Even if A.C.'s testimony at the preliminary hearing had been introduced at the section 115—10 hearing, though, our holding as to the reliability of E.R.'s hearsay statements would not change. At the preliminary hearing, A.C. testified that she had not noticed any problems with E.R. when she returned home from visiting the defendant on December 9. However, since one of A.C.'s sons had previously told her that the defendant and E.R. slept together when E.R. came to visit him, A.C. decided to have her mother examine E.R. to see if she had been "messed with." A.C. stated that when she and her mother looked at E.R.'s vaginal area, they could see that it was red and swollen.

The defendant points out that at the section 115—10 hearing A.C. contradicted her earlier testimony by stating that the reason she decided to have her mother look at E.R. was because E.R. was holding her vagina when she came home from visiting the defendant on December 9. The defendant concludes that this inconsistent testimony demonstrates that A.C. manipulated E.R. into accusing the defendant of sexual abuse.

We do not follow the defendant's logic. The inconsistency in A.C.'s testimony concerns the circumstances surrounding her belief that something was wrong with E.R. on December 9. Regardless of why A.C. felt that E.R. was not well, the fact remains that A.C. took the child to G.C.'s house and they found that she had been abused. No evidence was introduced at the preliminary hearing which casts doubt on the fact that E.R. named the defendant as the person who had abused her. Nor do A.C.'s statements at the preliminary hearing indicate that she suggested to E.R. that she falsely accuse the defendant of sexual abuse. We hold that E.R.'s statements to her mother and grandmother were properly admitted.

■ Finally, the defendant argues that the trial court erred by admitting Doctor Petty's testimony that: (1) E.R. had named the defendant as her abuser; and (2) E.R. had said that the defendant's mother (C.R.) had become angry when she saw the defendant abusing her. However, the defendant has waived these arguments by failing to object to Doctor Petty's testimony at trial. *Enoch*, 122 Ill. 2d at 186.

Nor did the trial court commit plain error (134 Ill. 2d R. 615(a)) by admitting Doctor Petty's testimony. Section 115—13 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1991, ch. 38, par. 115—13 (now 725 ILCS 5/115—13 (West 1992))) states:

"In a prosecution for violation of Section 12—13, 12—14, 12—15 or 12—16 of the 'Criminal Code of 1961', statements made by the victim to medical personnel for purposes of medical diagnosis or treatment including descriptions of the cause or symptom, pain or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment shall be admitted as an exception to the hearsay rule."

The statements challenged by the defendant in this case were made during an interview with E.R. in which Doctor Petty attempted to develop a medical history. Doctor Petty testified that such a history was important because it told her what to look for during the examination. We conclude that E.R.'s statements that the defendant had touched her in the privates and that the defendant's mother had become angry when she witnessed this behavior were "reasonably pertinent to diagnosis and treatment" so as to be admissible under section 115—13. See *People v. Park* (1993), 245 Ill. App. 3d 994, 1007 (statement of a 14-year-old girl that her father had abused her was reasonably pertinent to diagnosis and treatment); *People v. White* (1990), 198 Ill. App. 3d 641, *aff'd* (1992), 502 U.S. ___, 116 L. Ed. 2d 848, 112 S. Ct. 736 (statement made during medical history detailing

the incident of sexual abuse was reasonably pertinent to diagnosis and treatment).

For the foregoing reasons, we affirm the trial court.

Affirmed.

WOODWARD and GEIGER, JJ., concur.