**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (3d) 230432-U

Order filed January 22, 2025

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2025

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 18th Judicial Circuit, Du Page County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) ) | Appeal No. 3-23-0432 Circuit No. 22-CF-2487 |
| JAMES R. CRANDELL, | ) ) | Honorable Daniel P. Guerin |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE ANDERSON delivered the judgment of the court.
Justice McDade[1] and Justice Holdridge concurred in the judgment.

_____

**ORDER**

¶ 1      *Held*: (1) There was sufficient evidence to support defendant's convictions. (2) The court did not err in admitting hearsay evidence. (3) The court did not err in admitting evidence of defendant's prior offense. (4) Defendant was not deprived a fair trial due to cumulative errors. (5) Defendant was subject to a mandatory sentence of natural life imprisonment.

---

[1] Justice McDade participated in this appeal and has since retired. Our supreme court has held that the departure of a judge prior to the filing date will not affect the validity of a decision so long as the remaining two judges concur. *Proctor v. Upjohn Co.*, 175 Ill. 2d 394, 396 (1997).

¶ 2 Defendant, James R. Crandell, appeals from his convictions for predatory criminal sexual assault of a child and criminal sexual assault. Defendant argues (1) there was insufficient evidence to prove him guilty beyond a reasonable doubt, (2) the Du Page County circuit court erred in admitting hearsay evidence, (3) the court erred in admitting evidence of defendant's 2004 aggravated criminal sexual abuse, (4) cumulative error deprived defendant of a fair trial, and (5) the court erred in sentencing defendant to a mandatory sentence of natural life imprisonment, or alternatively, counsel was ineffective for failing to object to the sentence of natural life imprisonment in their motion to reconsider sentence. We affirm.

¶ 3                                                    I. BACKGROUND

¶ 4 Defendant was charged with two counts of predatory criminal sexual assault of a child (720 ILCS 5/11-1.40(a)(1), (b)(2) (West 2022)), and three counts of criminal sexual assault (*id.* § 11-1.20(a)(3), (b)(1)(C)). Relevant to this appeal, defendant was alleged to have knowingly made contact between his sex organ and the sex organ of A.Y. between January 3, 2018, and January 2, 2020, and on or about October 31, 2022, and November 14, 2022, after having previously been convicted of criminal sexual assault.

¶ 5 Prior to trial, the State filed a motion to admit statements A.Y. made to a sexual assault nurse examiner pursuant to Illinois Rule of Evidence 803(4)(B) (eff. Jan. 25, 2023). Over defendant's objection, the court held the statements were admissible, "[a]s long as there is some sort of testimony regarding these *** nurse examiners being concerned with or trying to analyze whether this alleged victim needed any further treatment beyond just physical[:] emotional or psychological."

¶ 6 The State further filed a motion *in limine* to introduce evidence of defendant's prior crimes to prove his propensity to commit sex offenses. The court precluded evidence of defendant's 1998

conviction but permitted evidence of defendant's 2004 aggravated criminal sexual abuse conviction involving his underage girlfriend, J.B. The court noted several factual similarities, including the ages of the victims, the fact that defendant was an adult during the assaults, the allegations all occurred at the place defendant was living, the sexual acts performed by defendant were similar, and there were other individuals nearby at the time of most of the assaults.

¶ 7    Defendant's bench trial began on July 5, 2023. The State introduced testimony establishing defendant was 40 years old at the time of trial and A.Y.'s uncle. A.Y. testified that from the ages 11 to 15, she stayed at defendant's apartment every weekend. She would sometimes ask her mother, Clarice C., if she could stay at defendant's home. A.Y. and Clarice agreed defendant was one of the few people A.Y. could contact in emergencies. The first instance of abuse occurred when A.Y. was 11 years old. A.Y. alleged defendant returned home and sat next to her on the living room floor while she was playing video games with her brother. Defendant began inappropriately touching A.Y.'s legs, arms, breasts, and vagina under her clothing. Clarice, A.Y.'s aunt, grandmother, and a family friend were in the dining room, adjacent to the living room. Defendant stopped touching A.Y. when Clarice said from the other room it was time to leave.

¶ 8    The second incident of abuse also occurred when A.Y. was 11 years old. While at defendant's apartment, A.Y.'s brother left to take out the trash. Defendant told A.Y. to lay down on the floor, pulled down her pants, and put his penis in her vagina. During the assault, A.Y.'s friends called saying they were outside the apartment and ready to go to the movies with A.Y. Defendant told A.Y. to "give [him] one minute." Defendant "[f]inish[ed] having sex" with her before he "sent [A.Y.] downstairs to go with [her] brother and [her] friend to the movies."

¶ 9    On October 30, 2022, A.Y. spent the night on defendant's couch. The next morning, when defendant and A.Y. were alone in the apartment, defendant asked A.Y. to come into his bedroom

3

for a "feelings check-in." When A.Y. entered the bedroom, defendant shut the door and locked it before engaging in vaginal sex with A.Y.

¶ 10    On November 14, 2022, A.Y. visited defendant's apartment. She arrived in the morning and left after dinner. A.Y. and defendant were the only people at the apartment for most of the day. When defendant's wife and her child arrived later in the day, defendant told A.Y. he wanted to do a "feelings check-in." When they entered defendant's bedroom, defendant pulled down A.Y.'s pants and put his mouth on her vagina. The bedroom door remained open during the incident with defendant's wife and her child in other room. A.Y. believed defendant had sexually assaulted her 20 or more times.

¶ 11    On November 15, 2022, A.Y. was with her grandmother. Her grandmother was talking to defendant's ex-wife on the phone. A.Y. told her grandmother about the assaults. Her grandmother drove to Clarice's work where A.Y. told Clarice about the assaults. A.Y. was taken to the police station and then the Children's Advocacy Center. After speaking to investigators, A.Y. was taken to the hospital to undergo a sexual assault examination where vaginal swabs were performed. A.Y. testified she had changed her clothes and urinated after the assault and before the vaginal swabs. A.Y. testified she did not tell anyone sooner because defendant had previously put a knife to his wife's throat and threatened her for an unrelated issue.

¶ 12    On cross-examination, defense counsel asked A.Y. about Clarice's friend, Derek. Counsel asked, "when [Derek] came over to your house, he would touch you inappropriately?" The State objected. Defense counsel stated they did not plan to "get[ ] into details about anything that may or may not have happened with [Derek]," other than he would touch A.Y.'s leg. For purposes of impeachment, counsel stated they intended to ask A.Y. whether she had a conversation with Clarice the morning of November 15 regarding Derek. The court permitted counsel to proceed

"[o]n that limited basis[.]" A.Y. denied telling Clarice the morning of November 15, 2022, that she was "uncomfortable with [her grandmother] touching [her] leg because Derek *** used to touch [her] leg." A.Y. testified she did tell her grandmother she was uncomfortable with her grandmother touching her legs. A.Y. denied having a phone conversation with Clarice and defendant in the spring of 2022 in which she informed them she was actively having sexual intercourse with her boyfriend. A.Y. was aware defendant was a registered sex offender.

¶ 13    Clarice testified that the morning of November 15, 2022, A.Y. told her she "was uncomfortable with [her grandmother] touching her leg because of what had happened to her with Derek." The conversation "rubbed [Clarice] the wrong way." When A.Y. was 11 or 12 years old, there was a prior "incident" involving Derek. Clarice explained, "[A.Y.] had brought up the Derek issue. And Derek was already long gone, and so I handled that the best way I knew how." The police were not notified. Clarice testified that in the spring of 2022, during a phone conversation with defendant on speakerphone, A.Y. stated she was having sexual intercourse with her boyfriend.

¶ 14    Melissa Dodge, a sexual assault nurse examiner, testified she conducted A.Y.'s sexual assault examination on November 15, 2022. The following testimony was elicited:

"Q. What did [A.Y.] say?

A. She said that [defendant] had been doing it since she was 11. That he sometimes put it in, and that he put it in three times within the last week. On Halloween was the last time that he did it.

Q. Did she tell you about anything that happened yesterday, which was on November 14, 2022?

A. She did.

Q. What did she say?

5

A. She said that yesterday, he didn't put it in. That he just gave her head. He told her—she told me that he touched her on her vagina, and that he [performed oral sex on her]. He touched her breasts with his fingers through her shirt, and that he pulled her pants down."

Dodge testified A.Y. confirmed defendant made oral contact with her vagina. A.Y. denied any other sexual acts occurred during this assault.

¶ 15 Sandra Lambatos, a forensic scientist, tested A.Y.'s vaginal swabs for saliva and semen. No semen or saliva was recovered from the samples. Lambatos testified, in the event of sexual penetration, she would generally expect to find semen on the vaginal swabs up to 72 hours after the assault. Lambatos testified that urinating or changing clothes after the assault and prior to the test could negatively affect the ability to detect saliva. Lisa Porter, another forensic scientist, testified she would expect to find semen on a vaginal swab for up to five days after a sexual assault. Porter found no semen on the vaginal swabs she tested.

¶ 16 J.B. testified that in May 2004, she was 16 years old and dating the then 21-year-old defendant. Defendant was living with J.B. and her family. On May 7, 2004, they began "making out, just kissing." Defendant removed J.B.'s clothes, making her feel uncomfortable. J.B. told defendant to stop. Defendant proceeded to perform oral sex on J.B. while holding her down. Defendant then penetrated her vagina with his penis after pinning her down. J.B. told defendant to stop multiple times and tried to push him off. After the assault, J.B. took her clothes and ran away. She had blood running down her legs. J.B.'s younger sister was sleeping in the house at the time of the assault. Defendant was convicted of aggravated criminal sexual abuse.

¶ 17 The court found defendant guilty of one count of predatory criminal sexual assault of a child and two counts of criminal sexual assault. The court's determination was largely based upon

6

the testimony of A.Y., which it found credible. The court noted it watched her body language and demeanor during her testimony, did not believe there were any inconsistencies in her testimony, and found A.Y.'s explanation as to why she did not come forward sooner, "credible and understandable." The court believed it highly unlikely A.Y. fabricated the story given what she had to go through following the report of abuse, including undergoing a sexual assault examination, speaking to investigators and prosecutors, and testifying at trial. The court believed A.Y.'s testimony was consistent with what A.Y. told Dodge. The court noted A.Y. expressly denied any other acts of sexual assault or contact occurred on November 14, 2022. As to the instance of sexual assault which occurred when A.Y.'s brother took the trash out, the court believed it was "[r]ather risky ***. But certainly not impossible[,]" despite the short time frame. The court determined it was reasonable that no physical evidence was recovered from the vaginal swabs given A.Y.'s allegations. The court stated that it understood A.Y.'s statement to Dodge that defendant "put it in three times within the last week," to mean "defendant put it in three times last week, leading up to Halloween the last time." The court stated it was giving the propensity evidence presented "its proper weight under the statute."

¶ 18     The presentence investigation report showed that defendant was previously convicted of criminal sexual assault in 1998, when he was 15 years old. The State argued, and the court agreed, defendant was subject to a mandatory term of natural life imprisonment for the conviction of predatory criminal sexual assault of a child because of his previous conviction. The court sentenced defendant to life imprisonment for his conviction of predatory criminal sexual assault of a child and consecutive terms of 25 years' imprisonment for each of the criminal sexual assault convictions. Defendant filed a motion to reconsider the sentence, which was denied.

## II. ANALYSIS

7

¶ 19     On appeal, defendant argues (1) the evidence was insufficient to support his convictions, (2) the court erred in admitting hearsay evidence of A.Y.'s statements to Dodge, (3) the court erred in admitting evidence of the 2004 aggravated criminal sexual abuse, (4) the cumulative effect of the court's errors deprived defendant of a fair trial, and (5) defendant was not subject to the statute mandating a sentence of natural life imprisonment. We address each issue respectively.

¶ 20                            A. Sufficiency of the Evidence

¶ 21     When reviewing a challenge to the sufficiency of the evidence, we review the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found defendant guilty beyond a reasonable doubt. *People v. Collins*, 106 Ill. 2d 237, 261 (1985). We give the State the benefit of all reasonable inferences. *People v. Wheeler*, 226 Ill. 2d 92, 116 (2007). "[A] conviction will be reversed where the evidence is so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of defendant's guilt." *Id.* at 115.

¶ 22     To prove defendant's guilt of predatory criminal sexual assault of a child, the State was required to prove beyond a reasonable doubt that defendant was 17 years of age or older and committed an act of sexual penetration with a victim who was under 13 years of age. 720 ILCS 5/11-1.40(a)(1) (West 2022). To prove the two charges of criminal sexual assault, the State was required to prove beyond a reasonable doubt that defendant was 17 years of age or over and committed an act of sexual penetration with a victim who was a family member of defendant and under 18 years of age. *Id.* § 11-1.20(a)(3). Sexual penetration under the statute includes acts of cunnilingus or fellatio. *Id.* § 11-0.1.

¶ 23     When considering the sufficiency of the evidence, we will not retry defendant. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 228 (2009). "[I]n a bench trial, it is for the trial judge, sitting as the trier of fact, to determine the credibility of witnesses, to weigh evidence and draw reasonable

8

inferences therefrom, and to resolve any conflicts in the evidence." *Id.* The circuit court is "in a much better position than are we to determine their credibility and the weight to be accorded their testimony." *Id.* at 229. The testimony of a single witness, if positive and credible, is sufficient to support a conviction. *Id.* at 228. A reviewing court will not reverse a conviction simply because defendant claims that a witness was not credible. *Id.*

¶ 24　　　Here, A.Y. testified that defendant penetrated her vagina with his penis when she was 11 years old. At the time of the assault, defendant, A.Y.'s uncle, was 17 years of age or older. A.Y. further testified that when she was 15 years old, defendant penetrated her vagina with his penis on October 31, 2022, and performed oral sex on her on November 14, 2022. The State's evidence therefore established the necessary elements of the offenses.

¶ 25　　　However, defendant does not argue A.Y.'s testimony proved the elements of the offenses. Instead, defendant argues no rational trier of fact could have found A.Y.'s testimony credible. Specifically, defendant raises the following issues to attack A.Y.'s credibility: (1) the implausibility of the initial two offenses as described by A.Y.; (2) the failure of anyone to notice the assaults or A.Y.'s emotional and psychological state following the assaults; (3) the lack of semen or saliva recovered during the vaginal swabs despite A.Y. alleging defendant penetrated vagina with his penis three times within the last week; (4) the relatively low number of assaults compared to the number of opportunities defendant had to assault A.Y; (5) the conflicts in testimony between A.Y. and Clarice; and (6) A.Y.'s previous "less than credible," allegation against Derek.

¶ 26　　　Defendant is asking us to reassess A.Y.'s credibility and retry the matter, something we will not do. See, *e.g.*, *Siguenza-Brito*, 235 Ill. 2d at 227-30. In finding A.Y. credible, the court noted her demeanor in the courtroom, the consistency of her allegations against defendant, and the

9

believability of her reasoning for why she decided to come forward with the allegations at the time she did. None of the issues defendant raises on appeal, individually or together, convince us that A.Y. was "so lacking in credibility that a reasonable doubt of defendant's guilt remains." *People v. Schott*, 145 Ill. 2d 188, 207 (1991). The court was in a better position to assess A.Y.'s credibility and the veracity of her allegations, and we will not disturb that determination. Because the court found A.Y. credible and her testimony established the necessary elements of the charged offenses, there was sufficient evidence to sustain defendant's convictions.

¶ 27                                B. Dodge's Testimony

¶ 28        Defendant next argues the court erred in admitting hearsay testimony of A.Y.'s statements to Dodge. Defendant argues the court previously ruled the hearsay evidence was only admissible if Dodge testified she was concerned A.Y. needed psychological treatment. Because no such testimony was introduced, the court erred in failing to *sua sponte* strike the testimony. Defendant further argues the statements were inadmissible regardless of the court's prior ruling. Generally, evidentiary motions, such as motions *in limine*, are reviewed for an abuse of discretion. *People v. Gonis*, 2018 IL App (3d) 160166, ¶ 17.

¶ 29        Hearsay evidence, an out-of-court statement offered to prove the truth of the matter asserted, is generally inadmissible absent an exception. *People v. Lawler*, 142 Ill. 2d 548, 557 (1991). Section 115-13 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115-13 (West 2022)) provides that in a prosecution of predatory criminal sexual assault of a child,

> "statements made by the victim to medical personnel for purposes of medical diagnosis or treatment[,] including descriptions of the cause of symptom, pain or sensations, or the inception or general character of the cause or external source

10

thereof[,] insofar as reasonably pertinent to diagnosis or treatment shall be admitted as an exception to the hearsay rule."

"[T]he plain language of section 115-13 [of the Code] evinces a legislative intent to apply this provision broadly." (Internal quotation marks omitted.) *People v. Freeman*, 404 Ill. App. 3d 978, 987 (2010). "[I]n examining a child suspected to be a victim of sexual abuse, details of the sexual acts including how, when, and where the act occurred and who was involved are pertinent information allowed under [section 115-13 of the Code]." (Internal quotation marks omitted.) *People v. Boling*, 2014 IL App (4th) 120634, ¶ 101. Questions and answers pertaining to medical history are admissible under the statute. *People v. D.R.R.*, 258 Ill. App. 3d 282, 293 (1994). There is no practical distinction between examining and treating healthcare providers. *People v. Falaster*, 173 Ill. 2d 220, 229 (1996). Examinations may be for both diagnostic and evidentiary purposes. *Id.*

¶ 30    Defendant does not point to any specific statement he believes was improperly admitted. Instead, he argues all of Dodge's testimony was inadmissible because Dodge did not believe A.Y. required, and A.Y. did not request, any emotional or psychological treatment. However, section 115-13 of the Code does not impose a requirement that hearsay statements made to examining healthcare providers result in subsequent treatment or further examination. Such a requirement would only undermine the purpose of the statute. Here, for example, there is no way Dodge could know whether A.Y. required further psychological treatment without evaluating her. The questions and answers provided by A.Y. were necessary for Dodge to make such a determination. The diagnostic nature of the examination was not changed by the fact that it did not result in subsequent treatment. Further, even if the examination was conducted in part for evidentiary purposes, its diagnostic nature was not nullified. See *id.* We reject defendant's attempt to differentiate *Falaster*

11

on the grounds that defendant was A.Y.'s uncle instead of an immediate family member. *Falaster* is clear that "at least in the family setting, a victim's identification of a *family member* as the offender is closely related to the victim's diagnosis and treatment in cases involving allegations of sexual abuse." (Emphasis added.) *Id.* at 230. Defendant was A.Y.'s uncle and A.Y. spent a significant amount of time at defendant's home. A.Y.'s identification of defendant as the perpetrator fell squarely within the hearsay exception.

¶ 31      Defendant alternatively argues trial counsel was ineffective for failing to ask the court to strike Dodge's testimony. To establish a claim of ineffective assistance of counsel, a defendant must show that counsel's representation fell below an objective standard of reasonableness and that counsel's actions resulted in prejudice to defendant. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *People v. Albanese*, 104 Ill. 2d 504, 525 (1984). The failure to file a motion does not amount to ineffective assistance if the motion would have been futile. *People v. Holmes*, 397 Ill. App. 3d 737, 741 (2010). Because the statements were properly admitted, defendant cannot establish he was provided ineffective assistance.

¶ 32                            C. Evidence of Other Acts

¶ 33      Defendant next argues the court erred in permitting evidence of the 2004 aggravated criminal sexual abuse against J.B. We review the circuit court's decision to admit other-crimes evidence for an abuse of discretion. *People v. Donoho*, 204 Ill. 2d 159, 182 (2003). The circuit court's ruling should only be disturbed when no reasonable person would take the court's position. *People v. Baez*, 241 Ill. 2d 44, 106 (2011).

¶ 34      Generally, evidence of other acts is inadmissible to show defendant's propensity to commit the charged offense. *Donoho*, 204 Ill. 2d at 170. However, where defendant is accused of predatory criminal sexual assault of a child, evidence of other crimes may be admissible to prove defendant's

12

propensity to commit sex offenses. *Id.* at 176; 725 ILCS 5/115-7.3(a)(1) (West 2022). The court may still preclude such evidence where its probative value is substantially outweighed by its prejudicial effect. *Donoho*, 204 Ill. 2d at 183. When weighing the probative and prejudicial value of the evidence, the court may consider: "(1) the proximity in time to the charged or predicate offense; (2) the degree of factual similarity to the charged or predicate offense; or (3) other relevant facts and circumstances." 725 ILCS 5/115-7.3(c) (West 2022). The admissibility of other-crimes evidence is not controlled solely by the number of years that have elapsed between the prior offense and charged offense. *Donoho*, 204 Ill. 2d at 183. "As factual similarities increase, so does the relevance, or probative value, of the other-crimes evidence." *Id.* at 184. "The existence of some differences between the prior offense and the current charge does not defeat admissibility because no two independent crimes are identical." *Id.* at 185. General areas of similarity between the charged offense and other crimes may be sufficient to establish the admissibility of other-crimes evidence. *People v. Littleton*, 2014 IL App (1st) 121950, ¶ 36.

¶ 35 We do not believe the court abused its discretion in permitting evidence of the 2004 aggravated criminal sexual abuse. Even though 14 to 18 years had elapsed between the prior act and the current offenses, that factor is not dispositive. The court noted that defendant was an adult during both offenses, the victims were close in age, the assaults occurred at the place defendant was living, the sexual acts performed were similar, and there was the common thread of the presence of other people nearby during the assaults. Therefore, even though there were differences, there were also sufficient general similarities to support the admission of the evidence.

¶ 36 Even if we assume the court erred in permitting evidence of the 2004 aggravated criminal sexual abuse, any error was harmless. In a bench trial, the fear the fact finder will use evidence of other crimes for an improper purpose is assuaged. *People v. Nash*, 2013 IL App (1st) 113366, ¶ 24.

13

We presume the circuit court considered the other-crimes evidence only for its intended limited purpose. *Id.* Nothing in the record rebuts this presumption. The court was clear its decision was largely based upon A.Y.'s credibility and that it was affording the propensity evidence its proper weight.

¶ 37                                    D. Cumulative Error

¶ 38        Next, defendant argues the cumulative errors of the court admitting Dodge's testimony and evidence of the 2004 aggravated criminal sexual abuse deprived defendant his constitutional right to a fair trial. Even where individual trial errors may not require reversal, those same errors may have the cumulative effect of denying defendant a fair trial. *People v. Speight*, 153 Ill. 2d 365, 376 (1992). However, there can be no cumulative error where there is no error. See *People v. Medley*, 111 Ill. App. 3d 444, 450 (1983). Because the court properly admitted the subject evidence, defendant cannot establish he was deprived his right to a fair trial.

¶ 39                                    E. Sentencing

¶ 40        Last, defendant argues the court erred when it sentenced him to a mandatory term of natural life imprisonment by applying section 11-1.40(b)(2) of the Criminal Code of 2012 (Criminal Code) (720 ILCS 5/11-1.40(b)(2) (West 2022)). The statute states:

> "(2) A person who has attained the age of 18 years at the time of the commission of the offense and who is convicted of a second or subsequent offense of predatory criminal sexual assault of a child, or who is convicted of the offense of predatory criminal sexual assault of a child after having previously been convicted of the offense of criminal sexual assault or the offense of aggravated criminal sexual assault, or who is convicted of the offense of predatory criminal sexual assault of a child after having previously been convicted under the laws of this State or any

14

other state of an offense that is substantially equivalent to the offense of predatory criminal sexual assault of a child, the offense of aggravated criminal sexual assault or the offense of criminal sexual assault, shall be sentenced to a term of natural life imprisonment. The commission of the second or subsequent offense is required to have been after the initial conviction for this paragraph (2) to apply. An offender under the age of 18 years at the time of the commission of the offense covered by this paragraph (2) shall be sentenced under Section 5-4.5-105 of the Unified Code of Corrections [Unified Code]." *Id.*

¶ 41 Defendant did not preserve this issue for review but asks us to review the matter under the plain error doctrine. "[Th]e plain-error doctrine bypasses normal forfeiture principles and allows a reviewing court to consider unpreserved error when either (1) the evidence is close, regardless of the seriousness of the error, or (2) the error is serious, regardless of the closeness of the evidence." *People v. Herron*, 215 Ill. 2d 167, 186-87 (2005). The first step in the analysis is to determine whether an error occurred. *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007).

¶ 42 We review matters of statutory interpretation *de novo*. *Donoho*, 204 Ill. 2d at 172. Our primary purpose "is to ascertain and give effect to the intent of the legislature." *Id.* at 171. The best evidence of legislative intent is the statute's plain language. *Id.* We view a statute as a whole and do not construe words in isolation. *People v. Clark*, 2019 IL 122891, ¶ 20. "Each word, clause, and sentence of a statute must be given a reasonable meaning, if possible, and should not be rendered superfluous." *Id.* We "presume[ ] that the General Assembly did not intend absurdity, inconvenience, or injustice in enacting legislation." *Id.* Where possible, we must construe a statute to uphold the validity and constitutionality of the statute. *People v. Relerford*, 2017 IL 121094, ¶ 30.

¶ 43 Defendant argues the plain language of the statute required defendant be 18 years of age or older at the time he committed the initial offense, not at the time of the subject predatory criminal sexual assault of a child offense. Therefore, because defendant was under 18 years of age at the time he committed his initial offense of criminal sexual assault, he is not subject to a mandatory life sentence under the statute and should have been sentenced pursuant to section 5-4.5-105 of the Unified Code (730 ILCS 5/5-4.5-105) (West 2022)).

¶ 44 However, put in its proper context, the plain language of the statute indicates defendant is subject to the statute if the commission of the *current* offense of predatory criminal sexual assault of a child occurred (1) when defendant was 18 years of age or older, and (2) after defendant was previously convicted of predatory criminal sexual assault, criminal sexual assault, aggravated criminal sexual assault, or a substantive equivalent, provided that (3) the commission of the subject predatory criminal sexual assault of a child occurred after the conviction for the prior offense. 720 ILCS 5/11-1.40(b)(2) (West 2022). The plain language of subsections (b)(1), (1.1), and (1.2) of the Criminal Code (*id.* § 11-1.40(b)(1), (1.1) (1.2)) support this conclusion where they require defendant be sentenced under 5-4.5-105 of the Unified Code only if he or she is under the age of 18 years at the time they commit the offense for which they are being sentenced.

¶ 45 Under defendant's interpretation, he argues he should have been sentenced under Section 5-4.5-105 of the Unified Code. Section 5-4.5-105 is a "sentencing scheme for defendants under the age of 18 when they committed their offenses." *People v. Buffer*, 2019 IL 122327, ¶ 36. It requires the circuit court consider defendant's age and level of maturity, does not permit the imposition of fees or fines against or defendant or their guardian, and permits the court to transfer the matter to juvenile court under certain circumstances. The legislature clearly did not

16

contemplate sentencing the 40-year-old defendant pursuant to this statute, and interpreting the statute to arrive at such a result would be untenable.

¶ 46　　　　We reject defendant's argument that the statute is rendered unconstitutional if read in this way. See *People v. Wilson*, 2015 IL App (4th) 130512, ¶ 103. There is no constitutional prohibition against imposing a life sentence for acts committed as an adult, even if the prerequisite conviction(s) triggering the sentence occurred when defendant was a minor. *People v. Lawson*, 2015 IL App (1st) 120751, ¶ 53. The statute interpreted in this way is therefore not unconstitutional.

¶ 47　　　　Defendant alternatively argues counsel was ineffective for failing to challenge the sentence. "A defendant bears the burden of proof on both elements of this test ***." *People v. Burks*, 343 Ill. App. 3d 765, 775 (2003). "[T]he failure to establish either [prong under the *Strickland* test] precludes a finding of ineffective assistance of counsel." *People v. Cherry*, 2016 IL 118728, ¶ 31. Because the sentence was not only proper but mandatory, defendant has failed to establish either prong of the *Strickland* test.

¶ 48　　　　　　　　　　　　　　　III. CONCLUSION

¶ 49　　　　The judgment of the circuit court of Du Page County is affirmed.

¶ 50　　　　Affirmed.